483 P.2d 806

WESTERN SAVINGS AND LOAN ASSOCI-
ATION, an Arizona corporation, Appel-
lant and Cross-Appellee,

v.

Ella ROBINSON, Individually and as Execu-
trix of the Estate of Doran Robinson, de-
ceased, Appellee and Cross-Appellant.

No. 1 CA–CIV 1272.

Court of Appeals of Arizona,
Division 1,
Department B.

April 15, 1971.

Rehearing Denied May 12, 1971.

Review Denied June 8, 1971.

**394**

Streich, Lang, Weeks, Cardon & French, by B. Michael Dann, Phoenix, for appellant and cross-appellee.

Johnson, Shelley, Roberts & Riggs, by J. LaMar Shelley, Mesa, for appellee and cross-appellant.

HAIRE, Judge.

Although the pleadings filed in this case presented several claims and counterclaims in the trial court, on this appeal we are only concerned with the plaintiffs' claim for declaratory judgment relief which was denied without prejudice, and the defendant's counterclaim for strict foreclosure which the trial court dismissed with prejudice.

Plaintiffs Robinson [1] filed their complaint seeking a declaratory judgment that pursuant to certain warranty deeds and "deeds of confirmation" the occupants of described lots owned by plaintiffs had the right to use and enjoy certain golf course facilities owned by the defendant. The defendant denied that plaintiffs had any such rights and counterclaimed seeking to have its previously foreclosed mortgage lien declared prior and superior to any rights which plaintiffs might have, and further seeking foreclosure of that lien against plaintiffs.

At the time the complaint was filed plaintiffs were the owners of Lots 17, 18 and 19 Apache Country Club Estates, Unit Two, situated near Apache Junction, Arizona.[2] These lots were adjacent to a golf course owned by the seller, and the purchase included not only the lot but certain golf course rights described in the

1. During the pendency of this case in the Superior Court, plaintiff Doran Robinson died. Accordingly his surviving spouse, Ella Robinson, as executrix of his estate, was substituted as a party plaintiff.

2. Oscar H. Welch and Ruth Welch originally purchased Lot 17 and the north half of Lot 18 from Apache Country Club, Inc., and subsequently sold the same to plaintiffs. All documents, deeds and pertinent circumstances relating to the purchases by the Welches and plaintiffs from Apache were identical except for names and legal descriptions. Reference in this opinion to the circumstances, documents and provisions in the deeds to the plaintiffs will be equally applicable to the transaction involving the Welches.

warranty deed from Apache to plaintiffs as follows:

"The Grantor, the owner and operator of an eighteen (18) hole golf course on properties hereinafter described and herein referred to as the subservient estate, in consideration of the Grantee's purchase of the hereinabove described real property, herein referred to as the dominant estate, and for other good and valuable consideration flowing to said Grantor, does hereby give, grant and convey unto the Grantee, their heirs, executors, administrators and assigns, nine (9) perpetual memberships in said golf club and course and the perpetual right to use and enjoy all the rights in the subservient estate, and the facilities thereon and hereafter placed thereon, for the use and enjoyment of all of the rights, conveniences and privileges attendant upon said nine (9) perpetual memberships without limitations and without further cost. The subservient lands are those certain one hundred twenty-eight (128) acres, more or less, in Maricopa County, Arizona, set forth and particularly described in that certain instrument recorded in Docket 4537 at Page 534, records of Maricopa County, Arizona.

"The memberships, and the rights attendant thereupon, granted hereby are considered and deemed to be, and are, a covenant running with the land and are appurtenant to the dominant estate lands first hereinabove described. The nine (9) golf memberships, and the right to use and enjoy all of the subservient lands and the facilities thereupon or hereafter placed upon said subservient lands, shall belong to the occupants of the dominant estate and a single membership is hereby defined to be a family group occupying a portion or all of the dominant estate. The memberships and the rights granted hereby are subject to prior encumbrances and liens of record.

"The grant hereby made with respect to the use of said golf course and facilities is not an exclusive right and the Grantor specifically reserves the right of granting other memberships and allowing and authorizing the use of said golf course and facilities by others, and without limitation."

The plaintiffs required as a part of the purchase escrow agreement that plaintiffs receive not only the warranty deed from Apache, but also a "Deed of Confirmation" from Home Savings & Loan Association, the holder of a mortgage on the golf course premises. This "Deed of Confirmation" had been prepared by the attorneys for plaintiffs and the attorney for Apache, and the provisions pertinent to this appeal read as follows:

"Whereas, concurrent with the execution of this instrument, Mortgagor is selling to DORAN ROBINSON and ELLA ROBINSON, his wife, hereinafter called Purchasers, certain lands other than those encumbered to Mortgagee, to wit:

Lot 19 and the South Half of Lot 18, APACHE COUNTRY CLUB ESTATES UNIT TWO, according to book 98 of Maps, page 1, records of Maricopa County, Arizona.

and in connection with said sale is granting and conveying to Purchasers, their heirs and assigns, certain golf club memberships, with all of the rights and privileges attendant upon said memberships, which memberships will be exercised and enjoyed by the Purchasers, their heirs and assigns on the golf course lands of Mortgagor, heretofore encumbered to Mortgagee, said Memberships, rights and privileges constituting easements appurtenant to the lands sold to Purchasers, and

"NOW, THEREFORE, Mortgagee does hereby consent to and recognize the aforesaid Mortgagor's grant, transfer and conveyance to Purchasers of the hereinabove described golf club memberships; expressly provided, however, that the same shall not in any way limit, restrict or affect Mortgagee's right, title, security or interest under the above de-

scribed mortgage, or impose upon Mortgagee, or with respect to the mortgaged property, any affirmative or negative duty or restriction whatsoever, except as follows: Mortgagee agrees that so long as the said mortgaged property is in fact in use and operated as a golf course that Mortgagee will not deny to the Purchasers access to the mortgaged property, or to the use thereof, for golfing privileges, upon any terms, conditions, considerations or restrictions greater, more restrictive or more onerous than the terms, conditions and restrictions applicable to such golfing privileges as pertain to said golf club memberships as granted to Purchasers by Mortgagor in connection with the above-referred to sale."

The deeds of confirmation were executed by Home Savings and delivered to the escrow agent with a letter authorizing the escrow agent to record the same " * * * upon collection for the benefit of Home Savings & Loan the total amount of $8,-659.34." The letter further advised the escrow agent that in the event these funds were not collected the deeds were to be returned immediately to Home Savings. The escrow was completed and closed. Subsequent to the purchase by plaintiffs, Apache defaulted on its mortgage, the mortgage on the golf course premises was foreclosed, and Western Savings (successor by merger to Home Savings) as mortgagee became the purchaser at the foreclosure sale. Although the above-described warranty deeds and deeds of confirmation were duly recorded prior to commencement of the foreclosure proceedings, plaintiffs were not named as defendants in the foreclosure litigation.

The questions raised on this appeal result from the trial court's rulings on plaintiffs' and defendant's motions for summary judgment. The trial court granted plaintiffs' motion for summary judgment on Count II of Western's counterclaim, dismissing *with prejudice* that portion of Western's counterclaim which sought to establish that defendant's mortgage was prior and superior to any golf course rights

which plaintiffs might have as a result of the warranty deeds and deeds of confirmation. Defendant does not bring to the attention of the Court any fact issue which would question the procedural propriety of the summary judgment remedy, but does question the correctness of the trial court's decision which impliedly found that plaintiffs' golf course rights were not subject to foreclosure under defendant's mortgage. For the reasons hereinafter stated, we hold that the trial court correctly dismissed with prejudice Count II of Western's counterclaim and that plaintiffs' golf course rights (without determining at this point the exact extent of such rights) were prior and superior to defendant's mortgage lien and therefore not subject to foreclosure as requested by defendant's counterclaim.

Inasmuch as the deeds of confirmation given by Western's predecessor in interest were duly recorded, there can be no question but that Western's rights as a successor under the mortgage were lessened to the extent that said deeds of confirmation lessened the mortgage rights of Home Savings & Loan Association. In our opinion the plain intent and purpose of the deeds of confirmation were to grant a limited exemption from Home's mortgage for plaintiffs' golf course rights.

Although the express terms of these deeds of confirmation provide that the rights granted plaintiffs by the mortgagee are not to " * * * limit, restrict or affect mortgagee's * * * security * * *", this clause is limited by the language "except as follows". The ensuing language reads:

"Mortgagee agrees that so long as the said mortgaged property is in fact in use and operated as a golf course that Mortgagee will not deny to the Purchasers access to the mortgaged property, or to the use thereof, for golfing privileges, upon any terms, conditions, considerations or restrictions greater, more restrictive or more onerous than the terms, conditions and restrictions applicable to

such golfing privileges as pertain to said golf club memberships *as granted to Purchasers by Mortgagor in connection with the above-referred to sale.*" (Emphasis added).

▮ "Purchasers" is defined in the second paragraph of the respective deeds of confirmation as meaning Doran Robinson and Ella Robinson in the one deed, and Oscar H. Welch and Ruth Welch in the other. Without going into the extent of the rights granted, it seems clear to us that by this language the parties intended to give plaintiffs protection for their golf course rights against defendant's mortgage for as long as the property was used for golf course purposes. For that period of time the mortgagee expressly agrees not to deny to plaintiffs the continued exercise of their golf course rights "as granted to Purchasers [plaintiffs] by mortgagor [Apache] in connection with the above-referred to sale. * * *" This latter quoted language in effect incorporates into the deeds of confirmation the warranty deed language concerning the golf course rights grant. We agree with the trial court's holding that plaintiffs' golf course rights were not subject to being extinguished by the foreclosure of defendant's mortgage, for so long as the property is in fact used and operated as a golf course.

▮ Defendant next contends that the deeds of confirmation were void because allegedly there was no consideration given therefor. If we assume that a showing of consideration was necessary as between these parties to support the deeds of confirmation,[3] then without question consideration was shown. The facts clearly show that in exchange for the purchase price the plaintiffs were to get not only the rights evidenced by the warranty deeds but also that the mortgagee was to relinquish certain rights evidenced by the deeds of confirmation. The mortgagee Home was advised of the plaintiffs' requirements and made arrangements through the escrow agent to deliver these deeds *to the plaintiffs* in exchange for payment *by the escrow agent* to the mortgagee of the sum of $8,659.34. While the mortgagee did apparently have a side arrangement with Apache that if these funds were received they would be applied against Apache's previously existing indebtedness to the mortgagee, nonetheless these funds were never in any true sense funds belonging to Apache and Apache never received possession or control of any kind thereover. These funds belonged to plaintiffs and the mortgagee knew that without delivery of the deeds of confirmation to plaintiffs (through the escrow medium) the mortgagee would never receive the money. Through the escrow arrangement, the mortgagee bargained for and received funds from plaintiffs—funds which plaintiff would not have released but for the execution and delivery of the deeds of confirmation. These facts do not present, as contended by defendant, a simple situation where the consideration was merely payment by Apache of funds already due and owing from Apache to the mortgagee. There was consideration for the deeds of confirmation, and the trial court did not err in dismissing with prejudice Count II of defendant's counterclaim.

We next consider plaintiffs' contention that the trial court erred in dismissing plaintiffs' complaint for declaratory judgment relief.

A.R.S. § 12–1832 provides as follows:

"Any person interested under a deed * * * may have determined any question of construction or validity arising under the instrument * * * and obtain a declaration of rights, status or other legal relations thereunder."

The trial court dismissed plaintiffs' claim for declaratory relief upon the ground that there was no justiciable controversy between plaintiffs and defendant, because the rights belonged to the "occupants" of the lots in question, and these oc-

---

3. *See* In re McDonnell's Estate, 65 Ariz. 248, 179 P.2d 238 (1947); Kline v. Kline, 14 Ariz. 369, 128 P. 805 (1912).

**398**

cupants were not before the court.[4] In our opinion the trial court too narrowly construed the grants contained in the deeds in question, and should have proceeded to consider the effect of these deeds so as to terminate the controversy and eliminate the uncertainties involved between these parties.

The express provisions of the granting clause of the warranty deeds provide that:

"* * * grantor, does hereby give, grant and convey unto the grantee [plaintiffs] * * * nine (9) perpetual memberships in said golf club and course and the perpetual right to use and enjoy all the rights in the subservient estate [the golf course], and the facilities thereon and hereafter placed thereon, for the use and enjoyment of all the rights, conveniences and privileges attendant upon said nine (9) perpetual memberships without limitations and without further cost * * * The memberships, and the rights attendant thereupon, granted hereby are considered and deemed to be, and are, a covenant running with the land and are appurtenant to the dominant estate lands first hereinabove described."

It is true that subsequent language in the warranty deeds states that these rights "* * * shall belong to the occupants of the dominant estate * * *" However, in our opinion this subsequent language was not intended to separate the actual ownership of these appurtenant rights from the *ownership* of the dominant estate, but rather, was intended as a limitation on *use* of the rights to the occupants, with actual ownership being retained by the owner of the dominant estate. Even though there were no actual occupants on the land at the time of the trial court's consideration of the motion to dismiss plaintiffs' complaint, there can be no question but that plaintiffs then presently owned these appurtenant rights; that they presently belong to plaintiffs and were not rights which belonged to some unidentified "occupants". These are rights which plaintiffs could then convey, relinquish or otherwise dispose of. In our opinion plaintiffs qualify under A.R.S. § 12–1832 as "* * * person[s] interested under a deed * * *", and in view of the record in this case it cannot be seriously contended that there was no genuine controversy as to the rights of the parties. Nor is there here involved a situation contemplated by A.R.S. § 12–1836 which provides that:

"The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding."

Here, the rights of any future "occupants" would of necessity be derivative from plaintiffs, and a present determination of the rights granted would be dispositive and would terminate the controversy concerning the extent of the grant.

Under A.R.S. § 12–1842 the statutorily provided declaratory relief remedy is:

"* * * declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered."

The recent decisions of this Court and of the Arizona Supreme Court have recognized the efficacy and wisdom of this relatively recent addition to the arsenal of judicial remedies and have held the remedy available when the relief sought comes within the language of the statute and the parties and circumstances before the court insure an adequate and thoroughly controverted presentation of the issues involved. Podol v. Jacobs, 65 Ariz. 50, 173 P.2d 758 (1946); Ricca v. Bojorquez, 13 Ariz.App. 10, 473 P.2d 812 (1970); Schwamm v. Superior Court In and For County Of Pima,

4. When this matter was before the trial court the lots were unimproved and unoccupied.

4 Ariz.App. 480, 421 P.2d 913 (1966); 22 Am.Jur.2d Declaratory Judgments § 8 (1965). The trial court should have proceeded to consider plaintiffs' claim for declaratory relief on its merits and to determine the rights granted in the deeds involved.

The trial court's dismissal of Count II of defendant-appellant's counterclaim is affirmed. The dismissal of Count I of plaintiffs-appellees' complaint is reversed and the matter remanded for further proceedings not inconsistent with this opinion.

Nothing stated in this opinion is to be construed as a determination by this Court of the *extent* of the rights granted, except that this Court's affirmance of the trial court's dismissal of the defendant's counterclaim constitutes a determination that, to the extent that any valid and enforceable rights have been granted, those rights are not subject to foreclosure as sought in defendant's counterclaim.

JACOBSON, P. J., and EUBANK, J., concur.