586 P.2d 640

The BOARD OF SUPERVISORS OF MARICOPA COUNTY, Arizona, by Henry H. Haws, George L. Campbell and Hawley Atkinson, a majority thereof, Appellant,

v.

Rhea WOODALL, Clerk of the Board of Supervisors of Maricopa County, Arizona, Charles F. Hyder, Maricopa County Attorney and Maricopa County ex rel. Charles F. Hyder, Appellees.

No. 1 CA–CIV 3960.

Court of Appeals of Arizona, Division 1, Department A.

April 21, 1978.

Rehearing Denied June 2, 1978.

**392**

Lewis & Roca by John P. Frank, Richard W. Bowers, Phoenix, for appellant.

Treon, Warnicke, Dann & Roush, P.A. by Charles D. Roush, Carol A. Roush, Phoenix, for appellee Woodall.

Burch, Cracchiolo, Levie, Guyer & Weyl, P.A. by Daniel Cracchiolo, Phoenix, for appellee Hyder.

Stephen D. Neely, Pima County Atty. by Howard L. Baldwin, Deputy County Atty., Tucson, amicus curiae.

## OPINION

FROEB, Chief Judge.

■ We decide in this case that a county board of supervisors may hire attorneys on its staff to render legal advice to the board and its departments and that the right to do so does not conflict with the statutory authority of the county attorney.

The majority of the Maricopa County Board of Supervisors, Henry Haws, George L. Campbell and Hawley Atkinson (hereinafter "the Board"), brought a complaint for special action against Rhea Woodall, Clerk of the Board of Supervisors (hereinafter "the Clerk"). In it, the Board sought an order that five staff attorneys (Richard Zielinski, James G. Bond, Douglas Zimmerman, William J. Carter and Joseph A. Mayfield) be paid their salaries then being denied by the Clerk. The complaint also sought a declaration that no provision of law precluded the Board of Supervisors from hiring in-house counsel to perform advisory functions of a legal nature. Thereafter, the Maricopa County Attorney, Charles F. Hyder (hereinafter "the County Attorney") was allowed to intervene in the proceedings by filing a complaint in special action. The County Attorney sought an order enjoining the Clerk from paying the salaries of the staff attorneys. Both the Board and the County Attorney then moved for summary judgment. The motions were supported by affidavits and legal memoranda. After argument, the trial court entered judgment sustaining the position of the County Attorney and the Clerk. The operative portion of the judgment is set forth in the footnote.[1] The motion of the Board for a new

1. The Court finds that A.R.S. § 11–532 mandates that the County Attorney shall act as the legal advisor to the Board of Supervisors.

IT IS, THEREFORE, the opinion of this Court that the law of the State of Arizona does not give express authority to the Board of Supervisors to retain in-house counsel nor is there any implied authority to do so for day-to-day legal advice.

IT IS THE FURTHER opinion of this Court that it is the duty of the County Attorney not only to advise the Board of Supervisors directly but also to provide such legal assistance and

advice that may be necessary from day to day to the boards, commissions and departments created and/or managed by the Board. By creating an "in-house" legal department staffed by full-time, salaried attorneys who perform both day-to-day legal advice and practical business assistance to the various departments and commissions as well as handling various matters in litigation, the Board of Supervisors has unilaterally usurped the powers and duties of the Maricopa County Attorney.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED as follows:

trial was denied. The Arizona Supreme Court declined jurisdiction in a special action brought by the Board in that court and the appeal to this court followed.

There is no dispute concerning the material facts. The staff attorneys are full-time employees of the county hired by the Board of Supervisors to perform a variety of functions which include both administrative duties and the rendition of legal advice. It is apparent from the record that very often the two functions are blended together. More particularly, the attorneys advised the Board of Supervisors and its subordinate boards and commissions on planning, zoning and building codes, on the general and statutory duties of the Board of Supervisors, on condemnation and flood control and on health and hospital matters. For purposes of this opinion, the functions and duties of the staff attorneys need not be further detailed. There is some dispute between the parties as to how long the Board of Supervisors has followed the practice of hiring staff attorneys and the precise duties which they performed. There is some indication the practice goes back to 1952; the County Attorney argues that the present system began in 1972. While a long-standing practice might in another case prove material, we do not think that it has any bearing on the legal issues decided here. It should also be pointed out that we are concerned in this case only with those legal services which do not constitute litigation.

Although the judgment of the trial court prohibits the Board of Supervisors from engaging counsel for litigation purposes, the issue was not raised directly in the trial court and is not argued on appeal.

A further factual matter, which is undisputed, is that the County Attorney stands ready, willing and able to furnish to the Board of Supervisors and its departments, as well as to other agencies of the county, such legal advice and representation as may be required. Both sides have made it clear that, for the purpose of this case, there has been no failure by the County Attorney to make legal services available. By the same token, the County attorney has not consented to the employment of staff attorneys by the Board of Supervisors or to their rendition of legal advice.

■ The first question is jurisdictional. To vest the court with jurisdiction in an action for declaratory judgment, the complaint must set forth sufficient facts to establish that there is a justiciable controversy. *Planned Parenthood Center of Tucson, Inc. v. Marks*, 17 Ariz.App. 308, 497 P.2d 534 (1972). The controversy must be real and not theoretical. *Moore v. Bolin*, 70 Ariz. 354, 220 P.2d 850 (1950). The parties must have adverse interests.

The County Attorney contends that there is no justiciable controversy between the Board and the Clerk and that, therefore, the court lacks jurisdiction to entertain the claim. In support of this contention he

1. The practice of the Maricopa County Board of Supervisors of maintaining a staff of legal advisors, separate and apart from the County Attorney, on a whole or part-time basis, is herewith declared to be illegal and shall be terminated upon entry of this judgment. This shall include those attorneys on the staff giving legal advice and those engaged in litigation regardless of the proportion of advice or litigation which may occupy the time of any one attorney.

2. IT IS FURTHER ORDERED that the Maricopa County Board of Supervisors and departments and commissions created and/or managed by the Board shall not employ outside counsel for specific legal advice unless and until the Maricopa County Attorney expressly consents to the employment of said outside counsel, or determines that he as County Attorney is unable to provide those legal services

either by the office of County Attorney or by appointment of a special deputy county attorney, or determines that he is unable to provide the services because of a conflict of interest determined by him or refuses to provide these services.

3. IT IS FURTHER ORDERED that the Maricopa County Board of Supervisors and the departments and commissions of Maricopa County shall not hire outside legal counsel for purposes of litigation unless and until the Maricopa County Attorney refuses to provide such services, consents to the employment of the outside counsel, or determines that he is unable to provide those services either by his office or by appointment of a special deputy county attorney by the County Attorney, or determines that he is unable to provide the services because of a conflict of interest or in direct litigation by the Board against the County Attorney.

relies upon *Riley v. County of Cochise*, 10 Ariz.App. 55, 455 P.2d 1005 (1969) and *Riley v. County of Cochise*, 10 Ariz.App. 60, 455 P.2d 1010 (1969).

■ In my opinion, a sufficient adverse interest to create a justiciable controversy is lacking in this case between the Board and its clerk. Were it not for the intervention of the County Attorney, the case would require dismissal.

How can the presence of the County Attorney create a justiciable controversy when the *Riley* cases held that the requisite adversity of interest was lacking between the board of supervisors and the county attorney? The answer lies in the specific claim made here but not in the *Riley* cases that the Board of Supervisors has usurped statutory powers of the County Attorney in hiring attorneys for legal advise. This is indeed a real controversy and the parties are adverse. *Cf. Maricopa County v. Biaett*, 21 Ariz.App. 286, 518 P.2d 1003 (1974). The County Attorney has a definite interest in the exclusive statutory right to render legal advice asserted here, and the Board of Supervisors has denied that right. The *Riley* cases are distinguishable inasmuch as the "difference of opinion" in those cases did not involve a determination of whether an exclusive power given one county officer had been usurped by another.

■ It is necessary to explain, however, how the court has jurisdiction over a case which originated without the required justiciability. The answer is that, while the case was *subject* to dismissal for lack of jurisdiction when the only parties were the Board and its clerk, it was not dismissed prior to the intervention of the County Attorney. While the original pleadings would not have supported a judgment because of the jurisdictional infirmity, the case, so long as it had not been dismissed, could support the intervention of a new party which introduced the required jurisdictional element. There is support for this in cases holding that, if a case is improperly brought, the court may retain jurisdiction to adjudicate issues raised by intervention. *Fuller v. Volk*, 351 F.2d 323 (3rd Cir. 1965).

*See also Miller & Miller Auctioneers, Inc. v. G. W. Murphy Industries, Inc.*, 472 F.2d 893 (10th Cir. 1973); *Atkins v. State Board of Education of North Carolina*, 418 F.2d 874 (4th Cir. 1969); *Pikor v. Cinerama Productions Corp.*, 25 F.R.D. 92 (S.D.N.Y.1960); *Truncale v. Universal Pictures Co.*, 76 F.Supp. 465 (S.D.N.Y.1948); *In re Raabe, Glissman & Co.*, 71 F.Supp. 678 (S.D.N.Y. 1947); 3B *Moore's Federal Practice* ¶ 24.-16[2] (1977); 7A Wright & Miller, *Federal Practice and Procedure: Civil* § 1917 (1972). Although this issue was not squarely raised in the trial court, it is our duty to consider it on review since the question of jurisdiction may be raised at any time. In my opinion, the trial court had jurisdiction to consider the issues raised by the pleadings of the Board and the County Attorney.

The case involves an interpretation of statutory duties and powers assigned to the county attorney, on the one hand, and the board of supervisors, on the other. The Arizona Constitution establishes that the county attorney and supervisors are county officers (art. 12, § 3) and that their duties and powers shall be as prescribed by law (art. 12, § 4). The board of supervisors possesses only those powers which have been expressly or by necessary implication delegated to it by the legislature. *Hart v. Bayless Investment & Trading Co.*, 86 Ariz. 379, 346 P.2d 1101 (1959); *Haupt v. Maricopa County*, 8 Ariz. 102, 68 P. 525 (1902); *Maricopa County v. Black*, 19 Ariz.App. 239, 506 P.2d 279 (1973). While our attention is directed to no case in Arizona so limiting the powers of the county attorney, it would logically follow that the same rule of law would apply. The powers and duties of the board of supervisors are enumerated in A.R.S. § 11–251. The board is given direct power to supervise all officers of the county and its subdivisions. A.R.S. § 11–251(1). The enumerated powers which have some direct relevance to this case are set forth in A.R.S. § 11–251(14), which states that the board may "direct and control the prosecution and defense of all actions to which the county is a party, and compromise them," and A.R.S. § 11–251(29), which states that

the board may "do and perform all other acts and things necessary to the full discharge of its duties as the legislative authority of the county government."

The county attorney derives his powers and duties from A.R.S. § 11–532. A.R.S. § 11–532(A)(9), states he shall "act as the legal advisor to the board of supervisors, attend their meetings and oppose claims against the county which he deems unjust or illegal." A.R.S. § 11–532(A)(7) states he shall "when required, give his written opinion to county officers on matters relating to the duties of their offices." A.R.S. § 11–803(E) states:

> The county assessor, county engineer, county health officer and county attorney shall serve in an advisory capacity to the commission and to the boards of adjustment.

A.R.S. § 18–206(A) reads, in pertinent part:

> [I]t is the duty of the county attorney of the county upon demand by the agent of the United States having charge of the work to be done by the United States under the agreement [between the United States and a county to construct a highway], and upon resolution by the board of supervisors directing him so to do, to file in the superior court of the county in which the land is located, proceedings for condemnation . . . .

A.R.S. § 11–641(B) states:

> If an illegal payment of money is made as described in subsection A of this section, the county attorney shall institute an action in the name of the county against the supervisors and others liable, to enjoin the payment of the money, or if it has been paid, to recover it with interest at the legal rate, and twenty per cent additional on the principal amount, to be paid into the county treasury to the credit of the fund from which the allowance was made.

There is very little case law in Arizona dealing with this subject. The Arizona Supreme Court, in *Pima County v. Grossetta*, 54 Ariz. 530, 97 P.2d 538 (1939), ruled that the board has the power to employ legal counsel in the handling of all litigation matters to which the county is a party. The case did not involve any issues concerning whether the board could hire attorneys for general advice and counsel. Division Two of the Court of Appeals, in *School District No. One v. Lohr*, 17 Ariz.App. 438, 498 P.2d 512 (1972), held that a school board could not employ counsel to provide legal services to the board of trustees.[2] The County Attorney argues that *Lohr* is so close to the facts of this case that it is dispositive. The Board rejects the decision as authority primarily on the distinction between school boards and boards of supervisors. The County Attorney relies heavily on the 1897 decision of the California Supreme Court in *Merriam v. Barnum*, 116 Cal. 619, 48 P. 727 (1897) which held that a county board of supervisors could not contract with special counsel on a monthly basis to give it legal advice when that was the duty of the county attorney. He points out that the *Merriam* court construed a California statute which was the exact counterpart of the predecessor of A.R.S. § 11–532(A)(9). The parties concede that, since *Merriam*, California law has been altered to allow boards of supervisors to hire attorneys. Finally, the Board refers us to cases from other states permitting a governmental unit to hire its own attorneys, but they either involve different kinds of governmental units or dissimilar laws relating to the powers and duties of those units.

The issues drawn by the parties center upon whether the law gives exclusive power to render legal advice to the office of the county attorney. The briefs devote considerable argument to an analysis of the statutes involved, but the analysis is meaningless without first determining the nature of legal advice and counsel. There is no question but that the board of supervisors can hire for its staff whom it wishes to carry out its many functions, limited only by its budget and appropriation. The question here is whether any statute prevents

---

2. The Arizona Legislature amended A.R.S. § 15–438 immediately after the *Lohr* decision in order to allow school boards to employ attorneys with the consent of the county attorney.

the board from hiring a person to give legal advice and, if not, whether a specific statute is necessary for the board to hire a person to give legal advice.

The rendering of legal advice is a consulting function. It does not exist for its own sake. Its purpose is to determine that action taken is authorized by law. In a complex world it permits reasoned conduct by people whose function is to carry out their assigned duties. It provides proper avenues for official action.

■ Our first inquiry is whether the board is prohibited by law from hiring an attorney and obtaining legal advice. We recognize without hesitation that the board is limited to the exercise of such powers as are granted to it expressly or by necessary implication. This is clear from a reading of the *Hart, Black* and *Haupt* cases. We do not accept the argument, however, that the board cannot furnish legal advice to itself and its departments because the statutes do not expressly authorize it. The obtaining of legal advice is not the exercise of a power. It does not exist for itself. We hold that the board does not require statutory authorization in order to obtain it. *Grossetta* did not reach this question; *Lohr* reached it, but *Lohr* involved a school board and not the board of supervisors. A supporting argument is made by the Board that A.R.S. § 11–251(29), a kind of "necessary and proper" clause, furnishes a statutory authorization for obtaining legal advice. We agree, although we do not think that the authority to obtain legal advice is dependent upon the provision.

■ Our next inquiry is whether the county attorney has the exclusive power to furnish legal advice to the board. There is no question but that he has the duty to render legal advice under A.R.S. § 11–532(A)(9) and A.R.S. § 11–803(E) and to furnish written opinions to county officers under A.R.S. § 11–532(A)(7).

There is a difference, however, between duty and exclusive power.

We are unable to accept the argument that duty to render legal advice is an exclusive power reposed in the office of the county attorney. There is no statute so stating as there is with regard to the Arizona attorney general in A.R.S. § 41–192.[3] It is logical that the legislature would provide that the county attorney have the duty to render legal advice to other county officers when, as and if there is a necessity for it. It is not logical to imply that the duty is an exclusive power. The argument that employment of attorneys outside of the county attorney's office gives rise to unnecessary duplication of services and is, therefore, against the public interest, does not hold true. If a given level of legal service is required by the board and its departments, arguably, the lawyer hours involved are the same whether the attorney is on the staff of the county attorney or on the staff of the board. In fact, it can be argued that the latter is more efficient, particularly where the staff attorney has administrative responsibilities to which the legal advice is related.

■ It is suggested that, where legal services are the exclusive province of the county attorney, a "check" upon the powers of the board occurs which is in keeping with the constitutional concept of separation of powers. It is argued that checks and balances are necessary to restrain the power that is naturally reposed in the board as the combined legislative and executive branch of county government. We are directed to no case which holds that the office of the county attorney takes on the characteristic of a branch of government whose constitutional purpose is to check the other branches. We are satisfied to believe that the office, as with other county offices under the constitution, is assigned express powers and duties which are separately exercised.

**3.** A.R.S. § 41–192(E) provides:
  Notwithstanding any other provision of law to the contrary, no state agency other than the attorney general shall employ legal counsel or make an expenditure or incur an indebtedness for legal services, but the Arizona water commission and the industrial commission shall be exempt from the provisions of this article.

Moreover, in the area of legal advice, it would be anomalous indeed if the lawyer served his client in the role of adversary rather than advocate. We are not convinced that the people of Arizona acting through their legislative representatives chose to invest the county attorney with a watchdog role over the board of supervisors.

The *Merriam* case decided in California in 1897 supports the County Attorney's argument. We quote the relevant portion:

> Boards of supervisors are a creation of statute, and, their powers being statutory, their acts must find warrant in the law, either expressly or by fair implication. . . . It is claimed that the authority of the supervisors in the matter under consideration is conferred by subdivision 35 of section 25 of the County Government Act, last above quoted. . .
> From the statutes above referred to it is clearly the intention of law that the district attorney, and no one else, shall be and act as the legal advisor of the board, with power to the board, however, to employ additional and special counsel to assist the district attorney in the prosecution or defense of suits to which the county may be a party. . . . The contract, then, was merely an attempt on the part of the board of supervisors to pay special counsel by the month for performing a duty which the law imposed upon the district attorney. . . .
> However valuable the services of the appellant may have been to the county in this instance, to permit compensation for them would be to override the law, and to destroy one of the strongest safeguards cast about the expenditure of county funds. *Merriam v. Barnum*, 116 Cal. at 622–25, 48 P. at 727–28.

We disagree with the *Merriam* holding and, therefore, reject it. While it is obvious that county government and the world generally are much more complex than in 1897, we do not rest our disagreement with the case upon changed times alone. We simply say that, as a matter of statutory interpretation, we decide the issue differently.

To the extent that the *Lohr* case is contrary to our holding, we must reject it as well. We point out, however, that *Lohr* dealt only with whether a school board had authority to retain counsel to represent it. The statutory background is considerably different with respect to the board of supervisors. Whether this difference alone distinguishes the case from the present one, we need not decide.

Finally, we think the Arizona Supreme Court opinion in *Grossetta* can be read to support our holding, although it dealt with litigation matters and construed the provision of the then existing statute which specifically empowered the board to "direct and control the prosecution and defense of all actions to which the county is a party, and compromise the same." We point specifically to the language of the opinion which states: "Since there is no specific prohibition against it in the statutes, we think [the predecessor to A.R.S. § 11–251(14)] gives implied authority to the board of supervisors in its discretion to employ counsel in the handling of all matters to which the county is a party." 54 Ariz. at 540, 97 P.2d at 542. The absence of a "specific prohibition" in the statutes was a significant factor in *Grossetta,* as it is in this case. *Cf.* A.R.S. § 41–192 (setting forth a "specific prohibition" relating to the hiring of counsel in state government where the attorney general is the designated attorney).

For the reasons stated, the judgment of the trial court is reversed and the case is remanded for entry of a new judgment consistent with this opinion.

HAIRE, Presiding Judge, concurring in part:

I cannot concur in that portion of Judge Froeb's opinion which discusses the jurisdictional aspects of the special action proceedings in the trial court, inasmuch as it is my opinion that the special action complaint filed by the Board of Supervisors against the Clerk of the Board stated a justiciable controversy within the scope of the Uniform Declaratory Judgments Acts, A.R.S. §§ 12–1831 to 1846.

The allegations of the complaint relating to the jurisdictional question may be summarized as follows. A.R.S. § 11–241(4) requires that all county warrants issued by the Board for the payment of money be signed by the Clerk. After learning of opinions given by both the Maricopa County Attorney and the Attorney General of the State of Arizona, to the effect that the payment of salary to the staff attorneys hired by the Board was illegal, the Clerk advised the Board that she would not sign any more warrants for the payment of the staff attorneys' salaries "until some court makes clear that I am authorized to do so." The Board disagreed with the interpretation by the County Attorney and the Attorney General of the statutes involved, and filed this action to obtain an interpretation of its rights under those statutes and requested that the defendant-Clerk be required to sign the county warrants for the salaries of staff attorneys hired by the Board.

The Uniform Declaratory Judgments Act which has been adopted in Arizona provides in A.R.S. § 12–1831 that:

> "Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed."

A.R.S. § 12–1832 makes it clear that a declaration of "rights, status or other legal relations . . . affected by a statute" are within the scope of the remedies available under the Act. Here, the contention is made that there is no justiciable controversy stated which is within the scope of the Act because there is only a "mere difference of opinion between an employer and his employee." Such a simplistic view of the problem is not warranted by the facts, and rejection of jurisdiction under the circumstances of this case would be contrary to the remedial purposes expressly stated in A.R.S. § 12–1842:

> "This article is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered."

In the ordinary employer-employee relationship, if the employee refuses to take action in compliance with the employer's wishes, the employer is normally free to take the desired action himself or through another employee. Such is not the case here. Under §§ 11–241 and 11–631, county warrants must be signed by the Clerk. Obviously, since the Clerk is appointed by the Board (A.R.S. § 11–422), the Board could have taken the drastic action of terminating the Clerk based upon her refusal to honor the Board's action in hiring the staff attorneys. However, to do so would still leave unresolved the underlying uncertainties which led to the Clerk's refusal to sign the warrants. In any event, I do not believe that such drastic action would be required.

In *Western Savings and Loan Association v. Robinson,* 14 Ariz.App. 393, 483 P.2d 806 (1971), recognizing the remedial purposes which led to the enactment of the Uniform Declaratory Judgments Act, this Court stated:

> "The recent decisions of this Court and of the Arizona Supreme Court have recognized the efficacy and wisdom of this relatively recent addition to the arsenal of judicial remedies and have held the remedy available when the relief sought comes within the language of the statute and the parties and circumstances before the court insure an adequate and thoroughly controverted presentation of the issues involved. *Podol v. Jacobs,* 65 Ariz. 50, 173 P.2d 758 (1946); *Ricca v. Bojorquez,* 13 Ariz.App. 10, 473 P.2d 812 (1970); *Schwamm v. Superior Court In and For County of Pima,* 4 Ariz.App. 480, 421 P.2d 913 (1966); 22 Am.Jur.2d Declaratory Judgments § 8 (1965)." 14 Ariz.App. at 398–99, 483 P.2d at 811–12.

Here the relief sought comes within the language of the declaratory judgment statutes, and, from a review of the record, it is immediately obvious that a thoroughly controverted presentation of the issues was developed in the trial court. As a prelimi-

nary to invoking the jurisdiction of a trial court under the declaratory judgments act, parties to a controversy are not required to take actions which involve possible statutory violations and attendant grave legal sanctions. Begrudging availability of the declaratory judgment remedy is inconsistent with the act's remedial tenor directed to the elimination of uncertainty and settlement of controversies. *See Planned Parenthood Center of Tucson, Inc. v. Marks,* 17 Ariz.App. 308, 497 P.2d 534 (1972). Applying these principles, I would affirm the trial court's holding that it had jurisdiction concerning the Board's special action complaint.

I concur in the result reached by Judge Froeb insofar as concerns his conclusion that the County Attorney was properly allowed to intervene in the trial court proceedings. To the extent that the two *Riley* decisions[1] discussed by Judge Froeb might appear to indicate a lack of jurisdiction concerning the County Attorney's complaint in intervention, I cannot see any meaningful basis for distinguishing those decisions from the facts presented here. I therefore would not attempt to distinguish them, but rather would simply refuse to follow them. To me, the *Riley* decisions are legally indefensible, although the result reached can undoubtedly be traced to the fact that by the time the *Riley* litigation reached the appellate court, the Board of Supervisors was not interested in proceeding with the litigation, thereby removing to a large degree the required element of adversarial confrontation.[2] In any event, I would have no hesitancy in finding declaratory judgment jurisdiction on the exact facts presented to the trial court in the *Riley* decisions.

For the foregoing reasons, I would hold that the trial court had jurisdiction over the parties and the questions presented in both the Board's initial complaint and the County Attorney's complaint in intervention.

I concur in all other aspects of Judge Froeb's opinion, and therefore join in his conclusion that the trial court's judgment must be reversed.

NELSON, Judge, specially concurring:

I concur in the opinion of Judge Froeb except as to the jurisdictional issue and, as to that, I concur in the opinion of Judge Haire.

---

1. *Riley v. County of Cochise,* 10 Ariz.App. 55, 455 P.2d 1005 (1969); *Riley v. County of Cochise,* 10 Ariz.App. 60, 455 P.2d 1010 (1969), cited *supra* in Judge Froeb's opinion.

2. *See Riley v. County of Cochise,* 10 Ariz.App. 55, 455 P.2d 1005 (1969).