473 P.2d 812

George C. RICCA, Robert L. Peart, Robert W. Gilpin and Lee Stephens, Board of Supervisors of Mohave County, Arizona, now composed of George C. Ricca, Robert W. Gilpin and F. L. Caughlin, Appellants,

v.

Albert BOJORQUEZ, Appellee.

No. 1 CA–CIV 1004.

Court of Appeals of Arizona,
Division 1,
Department B.

Aug. 25, 1970.

Rehearing Denied Sept. 25, 1970.

Review Denied Nov. 4, 1970.

William Clark Kennedy, Kingman, for appellants.

Favour & Quail, by John B. Schuyler, Jr., Prescott, for appellee.

HAIRE, Judge.

This appeal involves the constitutionality of A.R.S. § 24–341, a statute providing for the establishment of so-called "no-fence districts" upon the filing of petitions signed by a majority of taxpayers in a given area. The trial court, in granting the plaintiff's motion for summary judgment, held the statute to be unconstitutional. This appeal followed.

Before discussing the facts of this particular case, a few remarks about the background and purpose of no-fence districts will be made. At common law, an owner of livestock was liable for the damage caused when those animals trespassed onto the land of another; the landowner had no duty to fence his land to keep trespassing livestock out. Restatement of Torts § 504(1) (1938); 22 Am.Jur. Fences § 4 (1939); W. Prosser, Handbook of the Law of Torts § 75 (3d ed. 1964). In many states—especially western states—such a rule was incompatible with the best interests of the community and the common law rule was held inapplicable or was abrogated by statute. Restatement of Torts § 504(2), comment *h* (1938); *see, e. g.,* A.R.S. § 24–501 *et seq.* The effect of such judicial or legislative alterations was to require a landowner to construct a fence

to keep animals out. Absent such a fence, a landowner could not recover for damage to his lands caused by trespassing livestock. Restatement of Torts § 504(2) (1938); 22 Am.Jur. Fences § 5 (1939).

The Arizona legislature, however, realizing that in various parts of the state the original common law rule might be more suitable to community needs, made statutory provision whereby the common law rule could be restored through local creation of so-called "no-fence districts". *See* A.R.S. § 24–341 *et seq.* In a no-fence district an owner of land is not required to fence out trespassing livestock in order to recover for the damage they cause; rather, as at common law, the owner of the livestock has a duty to prevent their trespass; he has to respond in damages when he "knowingly, wilfully, carelessly or negligently allows or permits" his livestock to run at large. A.R.S. § 24–344. With the foregoing in mind we turn to the facts of the case before us.

Plaintiff is the holder of a permit from the federal government which allows him to graze his cattle on certain federal lands in Mohave County, Arizona. The authority for the granting of such permits is 43 U.S.C. § 315, known as the Taylor Grazing Act. The defendants, the Board of Supervisors of Mohave County, were petitioned to form a no-fence district by property taxpayers of the Mohave Valley Irrigation and Drainage District pursuant to the terms of A.R.S. § 24–341. That statute reads as follows:

"A. A majority of all taxpayers, according to the last preceding assessment roll for county and state taxes, residing on land in an irrigation district containing not less than thirty-five thousand acres of irrigable land for which water is available, or a majority of all taxpayers residing upon any portion of a compact body of land containing not less than twenty thousand acres and where at least seventy-five per cent of the area of such body of land is being successfully irrigated, or a majority of all taxpayers

residing upon a body of land containing not less than one thousand acres when the land is contiguous to the limits of an incorporated city or town which had a population of not less than thirty thousand people as shown by the last preceding United States census, and such body of land extending not more than twelve miles in one direction beyond the limits of such incorporated town or city, may petition the board of supervisors of the county in which such district or land is situated that a no-fence district be formed and that no fence be required around the land in the no-fence district designated in the petition.

"B. Upon filing the petition, the board shall immediately enter the contents upon its records and order that the no-fence district be formed."

The petition was filed with the Board of Supervisors (hereinafter defendants or board) on January 5, 1965, and the board entered its order establishing the district approximately two weeks later, after the board had examined and considered the petition's contents. After approving the petition the board caused its order to be published for four successive weeks as required by A.R.S. § 24–342.

, Subsequently plaintiff, whose grazing lands were in the area included in the no-fence district, commenced this action for a judgment declaring that A.R.S. § 24–341 was unconstitutional and that the no-fence district purportedly formed thereunder was void. The trial court held the statute to be unconstitutional because it violated

" * * * the due process clauses of the Constitution of the State of Arizona, Article II, Section 4, and the 14th Amendment to the United States Constitution in that the said statute does not provide the Plaintiff and other persons in the same class with notice and an opportunity as a matter of right to appear and be heard before the County Board

of Supervisors prior to the entry of orders establishing no-fence districts under the said statute, and because the said statute also constitutes an unlawful delegation by the legislature of its powers * * *."

The defendants have appealed from the foregoing judgment.

 In our opinion, under the provisions of the Uniform Declaratory Judgment Act and the principles enumerated in Skinner v. City of Phoenix, 54 Ariz. 316, 95 P.2d 424 (1939), and Planned Parenthood Committee v. Maricopa County, 92 Ariz. 231, 375 P.2d 719 (1962), plaintiff had standing to bring this action. The order establishing the no-fence district with the concomitant statutory sanctions applicable to plaintiff's admitted activities brought into direct play the statutory language making this remedy available when a person's rights, status or other legal relations are affected by a statute or municipal ordinance. See A.R.S. § 12–1832. As stated in A.R.S. § 12–1842, the statutorily provided declaratory relief remedy has for its purpose " * * * to settle and to afford relief from uncertainty and insecurity * * *; and is to be liberally construed and administered."

As indicated earlier herein, plaintiff holds a substantial acreage of grazing lands within the area circumscribed by the purported no-fence district.[1] If the "no-fence" district is valid, he is subject to both civil and criminal liability for "knowingly, wilfully, carelessly or negligently" allowing his livestock to run at large within the district. A.R.S. § 24–344. He has thus had to curtail the grazing activity of his cattle in and near the no-fence district in order to avoid any such possible liability. Plaintiff should not be required to violate the terms of the statute in order to obtain an adjudication of its constitutionality and the validity of the no-fence district created pursuant thereto, Monk v. City of Birming-

---

1. Pursuant to a provision in the Taylor Grazing Act, 43 U.S.C. § 315n, plaintiff, as a permittee of the federal government, takes his federal rights subject to the state's exercise of its police powers.

ham, 87 F.Supp. 538 (D.C.Ala.1949), aff'd, 185 F.2d 859 (5 Cir., 1950), cert. denied, 341 U.S. 940, 71 S.Ct. 1001, 95 L.Ed. 1367 (1951); 2 W. Anderson, Actions for Declaratory Judgments § 623 at 1435 (2d ed. 1951).

■■ We now proceed to the first constitutional issue. Plaintiff asserted at trial and the trial court held that A.R.S. § 24–341 constituted an unlawful delegation of legislative power. We note that this argument is not that the state legislature delegated legislative power to the *county board of supervisors* in this matter, for this they clearly may do;[2] rather, plaintiff asserts in his brief that in enacting A.R.S. § 24–341 the legislature " * * * delegated to the *circulator of the petition* the raw power to require the Board of Supervisors to create the no-fence district." (Emphasis in original). This argument is based on plaintiff's interpretation of the language of A.R.S. § 24–341 to mean that upon the filing of the petition, the board of supervisors is required to enter its order creating the no-fence district without checking or verifying the sufficiency of the petition and its compliance with the statutory requirements. We disagree with such an interpretation of A.R.S. § 24–341. Admittedly there is no express language in the statute requiring that the board be "satisfied" that the provisions of subsection A of § 24–341 have been complied with. However, in our opinion such a requirement is clearly implied. A board of supervisors possesses only such powers as are expressly conferred by statute, or necessarily implied therefrom. Board of Supervisors of Apache County v. Udall, 38 Ariz. 497, 1 P.2d 343 (1931). Here, the sole source of any power in the board of supervisors to create no-fence districts is found in A.R.S. § 24–341. The exercise of that power is made dependent upon the existence of the jurisdictional prerequisites set forth in subsection A of that statute. When subsection B states that "Upon filing the petition, the board shall * * * order that the no-fence district be formed", the words "the petition" must be understood as referring to a petition which in the opinion of the board complies with all of the requirements set forth in subsection A. We do not believe that anyone would argue that under this statute mandamus would lie to compel the board to enter an order establishing a "no-fence" district upon the filing of a petition which does not meet the statutory requirements. The board is not required to form the district merely because a piece of paper denominated "petition" has been filed. It is clearly implied that the board will examine the petition and satisfy itself of the existence of the facts made necessary by the statute as a pre-condition to the exercise of the board's authority to create the district, and in our opinion it is immaterial that this statute does not expressly condition the entry of the order creating the no-fence district upon the board's being "satisfied" that the petition complies with the statutory requirements. *Cf.* State ex rel. Pickrell v. Downey, 102 Ariz. 360, 430 P.2d 122 (1967).

■ For these reasons, we hold that A.R.S. § 24–341 does not unconstitutionally delegate legislative power to the circulator of a petition, but rather is a permissible delegation of legislative power to a political subdivision—the county—for the purpose of local self-government. Maricopa County Municipal Water Conservation District Number One v. LA Prade, 45 Ariz. 61, 73, 40 P.2d 94, 99 (1935); Hernandez v. Frohmiller, 68 Ariz. 242, 254, 204 P.2d 854, 862 (1949); 16 Am.Jur.2d Constitutional Law § 250 (1964); 16 C.J.S. Constitutional Law § 140 c (1956).

■ The other basis upon which the trial court found the statute to be uncon-

2. Maricopa County Mun. Water Cons. Dist. No. 1 v. LA Prade, 45 Ariz. 61, 73, 40 P.2d 94, 99 (1935); Hernandez v. Frohmiller, 68 Ariz. 242, 254, 204 P.2d 854, 862 (1949); 16 Am.Jur.2d Constitutional Law § 250 (1964); 16 C.J.S. Constitutional Law § 140 c (1956).

stitutional was that it violated the due process clauses of both the state and federal constitutions " * * * in that the said statute does not provide the plaintiff and other persons in the same class with notice and an opportunity as a matter of right to appear and be heard before the county board of supervisors prior to the entry * * *" of the order establishing the no-fence district.

We know of no constitutional due process requirement that legislative bodies afford to each individual citizen who might be interested notice and an opportunity to appear and be heard concerning the enactment of legislative acts which might directly affect that citizen's interest or activity. The Arizona Supreme Court has often held that the legislature is not required to give notice of hearing to so-called "interested" persons before enacting legislation, and that this also applies to county boards of supervisors or other governmental units when acting in a legislative capacity pursuant to validly delegated legislative authority. Territory v. Town of Jerome, 7 Ariz. 320, 64 P. 417 (1901); Faulkner v. Board of Supervisors, 17 Ariz. 139, 149 P. 382 (1915); Skinner v. City of Phoenix, 54 Ariz. 316, 95 P.2d 424 (1939). We note that there is no contention or suggestion that the order entered by the board was not duly enacted at a lawfully scheduled meeting, nor is there any contention that the order was not duly published for four successive weeks as required by A.R.S. § 24–342 before it became effective.

Plaintiff points to certain decisions which have found a denial of due process in the enactment of zoning ordinances where prior to the adoption thereof no notice was given to interested property owners. A review of these decisions reveals that in all cases except one,[3] the denial of due process which was found by the court had its actual basis in the failure of the governmental subdivision to comply with the provisions of a statutory enabling act which expressly required that such notice be given as a part of the enactment of the zoning ordinance. *See, e. g.*, Wood v. Town of Avondale, 72 Ariz. 217, 232 P.2d 963 (1951). Whether or not, in the absence of statutory requirements, constitutional due process would require special notice to property owners before the passage of a zoning ordinance is an interesting question, but one which we do not need to determine here, because in our opinion an order establishing a no-fence district is in no way analogous to the passage of a zoning ordinance in its effect upon plaintiff's use of his property.

The effect of the sanctions imposed by A.R.S. § 24–344 [4] is not to *directly* interfere with plaintiff's use of his property. He may still use it for cattle grazing purposes or otherwise to the full extent that he was previously able to do so. However, his right to use, or perhaps better stated, his freedom from liability for the use of the property of others is severely curtailed—he will be liable both civilly and criminally for damages caused by his trespassing livestock under the circumstances set forth in the statute.

The statute authorizing no-fence districts is in our opinion more analogous to the provisions of A.R.S. § 9–240, subsec. B 16 which authorizes cities and towns to enact ordinances prohibiting " * * * the roaming at large of animals within the town." We do not believe that anyone would seriously contend that constitutional due process would require that notice and an opportunity to appear and be heard be given to all city property holders before

---

3. Georgia decisions appear to be based strictly on constitutional due process requirements. *See* Sikes v. Pierce, 212 Ga. 567, 94 S.E.2d 427 (1956).

4. "The owner or person in charge of livestock, who knowingly, wilfully, carelessly or negligently allows or permits livestock to run at large within a no-fence district is guilty of a misdemeanor, and in addition is liable for damages for any trespass as provided for the collection of damages by owners of land enclosed within lawful fences."

passage of such an ordinance. The reasoning and holding of the Alabama court in Street v. Hooten, 131 Ala. 492, 32 So. 580 (1901) is directly in point and particularly pertinent to the due process question here urged. Quoting from the opinion in that case:

"This act of 1899 is not void for its failure to provide for any notice of the application to the commissioners' court for the incorporation of adjacent territory into an existing stock-law district. No man has such estate or interest in the lands of another as entitles him to turn his live stock at large upon it, and a requirement that he keep his stock on his own premises deprives him of no property right or other right assertable in any court. The legislature might, in the exercise of its police power, have forbidden the running at large of all stock in Clay county, or in any part thereof, absolutely, without notice to owners of stock there; and it was clearly competent for that body to confer upon the commissioners' court the power to designate the districts in which the stock law enacted by the legislature should operate and be effective, without any notice to persons living and owning stock within any such district." (131 Ala. at 503, 32 So. at 583).

We find no due process infirmity in the statute and order here involved.

■ Plaintiff's additional contention that the order establishing the no-fence district illegally interfered with his federally granted rights under his Taylor Grazing Act permit is likewise invalid. That act specifically subjects plaintiff's grazing rights to state exercise of the police power. *See* 43 U.S.C. § 315 n. Noh v. Babcock, 21 F.Supp. 519 (D.C., 1937), *reversed on other grounds,* 99 F.2d 738 (9 Cir., 1938), relied upon by plaintiff, is not persuasive. In that case, the state attempted to completely prohibit the very use authorized by the federal lease. No such prohibition is here involve͏

The judgment of the trial court is reversed and the matter remanded for further proceedings.

EUBANK, P. J., and J. THOMAS BROOKS, Superior Court Judge, concur. Note: Judge EINO M. JACOBSON having requested that he be relieved from consideration in this matter, Judge J. THOMAS BROOKS was called to sit in his stead and participate in the determination of this decision.