489 P.2d 1238

**In the Matter of MARICOPA COUNTY APPEAL.**

**No. I CA–CIV 1645.**

Court of Appeals of Arizona,
Division 1,
Department B.

Nov. 2, 1971.

Rehearing Denied Nov. 30, 1971.

Review Denied Jan. 4, 1972.

**538**

Gary K. Nelson, Atty. Gen. by D. Jay Ryan, Asst. Atty. Gen., Phoenix, for appellant Arizona Dept. of Mental Retardation.

Ross P. Lee, Public Defender for Maricopa County by Anne Kappes, Deputy Public Defender, Phoenix, for appellee juvenile.

HAIRE, Judge.

This appeal from an order entered in a juvenile proceeding in the Superior Court requires the Court to determine the conditions under which a juvenile court judge may order a mentally retarded delinquent juvenile committed to the State Department of Mental Retardation for placement in one of its training centers.

Counsel for the State Department of Mental Retardation (SDMR) contends that such commitment can only be made when all statutory conditions normally prerequisite to voluntary admission to SDMR institutions have been complied with or have occurred. On the other hand, counsel for the juvenile contends that A.R.S. § 8–242B gives the juvenile court judge the absolute right to commit the juvenile to such institutions, once he finds that the delinquent is mentally retarded, regardless of the statutory prerequisites set forth in A.R.S. Title 36 which normally govern admittance to such training centers.

The facts pertinent to this appeal are as follows. A juvenile petition was filed in the Superior Court charging the juvenile with a felony. Prior to the dispositional hearing the juvenile's mental ability was brought into question, and pursuant to A.R.S. § 8–242A, the court ordered the juvenile committed to the Arizona State Hospital for psychiatric examination and evaluation pending a final disposition of the matter. Upon receipt of the psychiatric examination and evaluation report, the judge held a dispositional hearing at which he found that the juvenile was mentally retarded, and that "he is committable under the laws of the State of Arizona as a mentally retarded child" and that he was free from communicable diseases. The court then ordered the juvenile:

"* * * committed to the State Department of Mental Retardation for placement in the Eastern Arizona training programs or such other appropriate institution provided by the State Department of Mental Retardation * * *."

Immediately subsequent to the entry of the above-quoted order, the State Department of Mental Retardation made its first appearance in the proceedings and filed a motion requesting that the court amend or modify its order so as to contain a provision that the juvenile would remain in the physical custody of the Arizona State Hospital "until such time as quarters are available in a center under the jurisdiction of the State Department of Mental Retardation". Subsequently, the court entered a formal written order which denied the motion to amend, denied a requested stay order pending appellate review, and threatened the director of the SDMR with contempt sanctions should he fail to comply with the orders of the court. The SDMR has appealed from this formal written order.

■ Preliminarily, it is necessary to dispose of a motion to dismiss this appeal. This motion was filed on behalf of the juvenile, and is based upon the theory that the SDMR was not a party to the proceedings against the juvenile, and thus could not properly appeal from the complained of order. In our opinion the motion to dismiss is not well taken. While the SDMR might possibly have proceeded by independent action in the juvenile court to obtain a declaration of its obligations and duties pursuant to the court's order entered in

the juvenile proceedings, the availability of this alternative remedy did not necessarily preclude it from intervening in the juvenile proceedings, especially in the absence of any objection thereto. While no formal petition for intervention was filed, the SDMR did voluntarily submit itself to the jurisdiction of the court, and the court, without objection from the juvenile's counsel, assumed jurisdiction and entered its order which among other things, threatened the director of the SDMR with contempt sanctions. In our opinion under these circumstances the SDMR was not required to violate the court's order, await contempt proceedings, and then by special action or an appeal from the contempt proceedings raise the question of the correctness of the trial court's order. Rather, under the circumstances here presented the SDMR was entitled to have its duties and obligations determined by a direct appeal from the order involved. The motion to dismiss the appeal is denied.

Turning now to the merits of the appeal, in committing the juvenile to the State Department of Mental Retardation for placement in one of its training centers, the juvenile court purported to act pursuant to the provisions of A.R.S. § 8–242, subsections A and B of which read as follows:

"A. If, at a dispositional hearing of a child adjudged to be delinquent, or incorrigible, or prior thereto, the evidence indicates that the child may be suffering from mental retardation or mental illness, the juvenile court before making a disposition shall order such study and report on the child's mental condition as the court determines is necessary.

"B. If it appears from the study and the report that the child is mentally ill

or mentally retarded, the juvenile court shall hear the matter, and if the child is found to be committable under the laws of this state the juvenile court shall order the child committed to the appropriate institution for the mentally ill or mentally retarded."

It will be noted that under subsection A, at or prior to the disposition hearing [1] concerning a child adjudged to be delinquent, the court may order a study and report concerning the child's mental condition. Subsection B then deals with the subject of what is to be done with the delinquent child when the study and report show mental illness or mental retardation. If the delinquent mentally retarded child "is found to be committable under the laws of this state" the court is given the authority to order the child committed to an appropriate institution. The question arises as to the meaning to be accorded to the language "and if the child is found to be committable under the laws of this state". It would appear that something more was intended than a finding of delinquency and mental retardation, since under the statutory scheme of § 8–242 the finding that the child is committable is listed as an additional requirement over and above delinquency and mental retardation. The appellant contends that the quoted language must be read in reference to the particular institution to which the court desires to make the commitment, that is, that under a given set of facts a child may "be commitable under the laws of this state" to one institution while not necessarily committable to another institution. Following this line of logic, the appellant contends that under the provisions of the appropriate sections of Title 36, Arizona Revised Stat-

---

1. The Rules of Procedure for the Juvenile Court, 17 A.R.S., concerning delinquent juveniles contemplate an advisory phase, a detention phase if necessary, an adjudicatory phase, and a dispositional phase, with separate hearings on each phase or a combination of phases in a single hearing as seems advisable to the court. See Rule 7, Rules of Procedure for the Juvenile Court. In the case under considera-

tion, although there had been an adjudicatory hearing, no order adjudicating the juvenile a delinquent was ever entered. The SDMR does not rely upon this defect in the record in attacking the juvenile court's commitment order made at the dispositional hearing. Therefore for the purposes of this appeal, we will proceed as though there had been an express adjudication of delinquency.

utes, governing admission to State Department of Mental Retardation facilities, certain prerequisites must be met. First, A.R.S. § 36–559 requires that the mentally retarded person must be a bona fide resident of the State of Arizona, free from any communicable disease, and mentally retarded to such an extent that he will benefit from the care, treatment and services available at the center. Assuming that the conditions of A.R.S. § 36–559 have been met, then under § 36–561, admission is further contingent upon the director being satisfied that the retarded person is (1) eligible for admission in all respects, (2) can benefit from the care and services available, and (3) provided the necessary accommodations at the center are available. Appellant candidly admits that these two statutes deal with voluntary commitments to State Department of Mental Retardation facilities, whereas A.R.S. § 8–242B contemplates involuntary commitment of a mentally retarded delinquent juvenile. Notwithstanding this, appellant points out that most of these same voluntary admittance prerequisites are found in the only statutory provision in Title 36 which allows involuntary commitment to State Department of Mental Retardation facilities, A.R.S. § 36–564. That statute deals with the transfer of mentally retarded persons from other institutions and reads as follows:

"The superintendent of a state institution who has in such instutition a child whom the superintendent believes to be mentally retarded and in need of care and treatment at a center, may petition the court which originally ordered the child to such institution, or the court where such institution is located, for admission of the child to a center by filing with the court a petition containing the information required by § 36–560. Upon a finding by the court that the child is mentally retarded and will benefit from the care and treatment available at a center, the court may order the child transferred to a center as soon as quar-

ters are available and shall make such order for maintenance as is provided in § 36–562."

■■ In support of the juvenile court's order counsel for appellee urges that well-known principle of statutory construction that a specific statute governs over general statutes dealing with the same subject matter, contending that the provisions of A.R.S. § 8–242 constitute specific legislation and thus should govern over the provisions of Title 36. While we agree with the principle stated, we are unable to find that it has application to the statutes here involved. A.R.S. § 8–242 does not refer specifically to commitments to State Department of Mental Retardation facilities, and only by ignoring the language "if the child is found to be commitable under the laws of this state" can it be interpreted as giving the juvenile court judge the absolute unconditioned authority to commit the juvenile to State Department of Mental Retardation facilities. The cardinal rule of statutory construction is that the court should attempt to determine the intent of the legislature. City of Tombstone v. Macia, 30 Ariz. 218, 245 P. 677 (1926); Phoenix Title & Trust Co. v. Burns, 96 Ariz. 332, 395 P.2d 532 (1964). In reaching this result the court should, if possible, give meaning to all language used, and should not assume that the legislature did not intend that all language used be given effect. State Board of Technical Registration v. McDaniel, 84 Ariz. 223, 326 P.2d 348 (1958); City of Phoenix v. Kelly, 90 Ariz. 116, 366 P.2d 470 (1961). Likewise, where different statutory provisions deal with the same subject matter, the statutes should be construed together in an attempt to arrive at a result in accord with the intent expressed therein. Peterson v. Flood, 84 Ariz. 256, 326 P.2d 845 (1958); State ex rel. Larson v. Farley, 106 Ariz. 119, 471 P.2d 731 (1970).

■ Applying these principles to the statutes here involved, we do not believe that in enacting A.R.S. § 8–242 the legislature intended to give the juvenile court

judge the absolute authority to commit mentally retarded delinquent juveniles to State Department of Mental Retardation facilities. Rather, it is our opinion that before such commitment may be made, the court must, in addition to making an adjudication of delinquency and entering a finding of mental retardation, find that the child is a bona fide resident of the State of Arizona, free from any communicable disease, and is mentally retarded to such an extent that he will benefit from the care, treatment, and services available at a center. Further, such commitment must be conditioned upon the availability of the necessary accommodations at the particular State Department of Mental Retardation facility involved. Of course, unless the availability of facilities has been ascertained in advance of the entry of such an order, it would be necessary for the trial court to make interim provisions for the disposition of the mentally retarded delinquent.

An additional argument in support of the above result has been urged by the State Department of Mental Retardation. This argument relates to a 1971 proposed amendment of A.R.S. § 8–242 passed by the legislature but vetoed by the governor. *See* House Bill 172, 30th Legislature, First Regular Session. According to counsel for the State Department of Mental Retardation, this legislation would have amended A.R.S. § 8–242 so as to give the juvenile court judge the authority to make direct, unconditional commitments to the State Department of Mental Retardation facilities. This proposed amendment has not been made a part of the record and for this reason we doubt that it is a proper subject for consideration by the court.[2] In any event, in view of the result we reach herein, it has not been necessary for us to consider this proposed amendment.

Reversed for further proceedings consistent with this opinion.

EUBANK and STEVENS, JJ., concur.

2. To the effect that a proposed amendment is a proper subject for judicial notice,

see Crook v. Commonwealth, 147 Va. 593, 136 S.E. 565 (1927).