617 P.2d 56

Howard TERRY and Nancy Terry, husband and wife; Jerry Ann Young, Gene Woodfin, Plaintiffs–Appellants,

v.

LINCSCOTT HOTEL CORPORATION; Robert H. Karatz & Naomi Karatz, his wife; Harold I. Grossman & Ryna Jean Grossman, his wife; Norman Grossman & Alene Grossman, his wife; Norman D. Levitt & Elizabeth Levitt, his wife; J. Allen Garner & Hazel Garner, his wife; Eloise D. Shapiro & Donald Shapiro; as co–partners in the Arizona General Partnership known as Scottsdale Enterprises, Defendants–Appellees.

No. 1 CA–CIV 4632.

Court of Appeals of Arizona, Division 1, Department B.

July 24, 1980.

Rehearing Denied Sept. 3, 1980.

Review Denied Sept. 25, 1980.

Snell & Wilmer by William H. Douglas, Phoenix, for plaintiffs–appellants.

Black, Robertshaw, Frederick, Copple & Wright, P. C. by John N. Norris, Phoenix, for defendants–appellees.

## OPINION

O'CONNOR, Judge.

Jewelry and other items belonging to appellants were stolen from their rooms while they were guests at the Scottsdale Hilton Inn. They brought suit for the loss against appellees, owners of the Inn. Appellees moved for partial summary judgment as to that portion of the loss which was jewelry based on A.R.S. § 33–302(A), which restricts the liability of innkeepers. The trial court granted appellees' motion for partial final summary judgment. We affirm.

The loss occurred on December 28, 1977. Some unknown thieves stole the jewelry and other items while appellants were away from their rooms. The first count of appellants' complaint simply alleges the loss, appellees' status as innkeepers, and appellants' status as guests, and seeks recovery for the loss. Count two of the complaint alleges a cause of action for negligence, as follows:

The theft of plaintiffs' personal property from their locked room is the direct and proximate result of the defendants' negligence, carelessness and recklessness in failing to provide adequate security, failing to provide plaintiffs with the degree of care and protection to which they were entitled as paying guests, and in failing to warn plaintiffs of the series of thefts and burglaries which had occurred at the Scottsdale Hilton prior to December 28, 1977.

Appellees served interrogatories on appellants asking them to state each act or omission which appellants alleged constituted negligence on appellees' part. Appellants answered as follows:

Failure to provide adequate security including the use of security guards, interior hall security personnel and adequate locking and securing devices on the doors.

Failure to increase effective security measures with full knowledge of the high incident rate of theft in the Scottsdale Hilton.

Failure to warn the plaintiffs of the number of thefts and burglaries committed in the Scottsdale Hilton prior to December 28, 1977.

A.R.S. § 33–302 reads in part as follows:

A. An innkeeper who maintains a fireproof safe and gives notice by posting in a conspicuous place in the office or in the room of each guest that money, jewelry, documents and other articles of small size and unusual value may be deposited in the safe, is not liable for loss of or injury to any such article not deposited in the safe, *which is not the result of his own act.*

B. An innkeeper may refuse to receive for deposit from a guest articles exceeding a total value of five hundred dollars, and unless otherwise agreed to in writing shall not be liable in an amount in excess of five hundred dollars for loss of or damage to property deposited by a guest in such safe *unless the loss or damage is the result of the fault or negligence of the innkeeper.*

C. The innkeeper shall not be liable for loss of or damage to merchandise samples or merchandise for sale displayed by a guest unless the guest gives prior written notice to the innkeeper of having and displaying the merchandise or merchandise samples, and the innkeeper acknowledges receipt of such notice, but in no event shall liability for such loss or damage exceed five hundred dollars *unless it results from the fault or negli-*

*gence of the innkeeper.* [emphasis added]

The notice placed in appellants' rooms reads as follows in large size print:

### PLEASE

Safety Deposit Boxes for your valuables are available at the Reception Desk. We recommend that you deposit all valuables. We also suggest you double bolt your door when using the patio door to the swimming pool.

Arizona Statutes do not hold hotels liable for missing valuables, nor do we have insurance coverage.

### So ...

please deposit your valuables.

There is no dispute that the hotel maintained a fireproof safe as required by A.R.S. § 33–302(A).

On appeal, appellants argue that partial summary judgment for appellees was improper for two reasons. First, they argue that A.R.S. § 33–302(A) was intended to relieve an innkeeper of his common law strict liability for the guest's property, but not from the effects of his own negligence. Second, appellants contend that the trial court erred in holding as a matter of law that the notice placed in appellants' rooms complied with the statute.

### INNKEEPER LIABILITY

The common law rule imposed a strict rule of liability upon an innkeeper and was founded upon the public policy of an earlier day. We quote from the case of *Minneapolis Fire & Marine Insurance Co. v. Matson Navigation Co.*, 44 Hawaii 59, 61, 352 P.2d 335, 337 (1960):

The imposition of strict liability on the innkeeper found its origin in the conditions existing in England in the fourteenth and fifteenth centuries. Inadequate means of travel, the sparsely settled country and the constant exposure to robbers left the traveler with the inn practically his only hope for protection. Innkeepers themselves, and their servants, were often as dishonest as the highwaymen roaming the countryside and were not beyond joining forces with the outlaws to relieve travelers and guests, by connivance or force, of their valuables and goods. Under such conditions it was purely a matter of necessity and policy for the law to require the innkeeper to exert his utmost efforts to protect his guests' property and to assure results by imposing legal liability for loss without regard to fault.

Statutes such as A.R.S. § 33–302 were enacted as law enforcement improved and travel was less hazardous. The need to limit an innkeeper's potential liability became apparent. As is stated in an annotation at 37 A.L.R.3d 1276, 1279–80 (1971):

The statutes defining the limits of an innkeeper's liability for loss of or injury to his guest's property represent a legislative intent to soften what has been termed an unduly harsh common–law rule.

In former times, there were a number of sound reasons to justify the public policy of imposing a strict rule of liability on innkeepers. And so, at common law, the innkeeper was practically an insurer of property brought by a guest to his inn and he was relieved of liability for the loss of such property only where the loss occurred through an act of God, through an act of a public enemy, or through the fault of the guest himself.

Since the passing of years has erased much of the need for such absolute liability, the modern innkeeper is often permitted by statute to lessen his responsibility to certain limits, if he provides suitable locks on his guests' rooms, provides a safe for the protection of their valuables, and provides adequate notice of the presence of that safe and, in some cases, of his limited liability. [footnotes omitted]

A.R.S. § 33–302(A) provides that an innkeeper who maintains a fireproof safe and posts the required notice is not liable for loss of jewelry or articles of unusual value

"which is not the result of his own act." Subsection B provides that the innkeeper is not liable for more than $500.00 for the loss of jewelry or valuable items placed in the innkeeper's fireproof safe unless otherwise agreed to in writing, or unless the loss is "the result of the fault or negligence of the innkeeper." Subsection C has a separate provision limiting liability of the innkeeper for loss or damage to merchandise samples unless it "results from the fault or negligence of the innkeeper."

Appellant argues that the phrase in subsection A, "which is not the result of his own act," preserves a cause of action against the innkeeper for his negligent inaction in failing to provide adequate security and in failing to warn appellant of the number of thefts within the hotel.

There are cases from some jurisdictions holding that innkeeper's liability statutes were intended to relieve only the innkeeper's liability as an insurer, but not to preclude recovery for loss caused by the innkeeper's negligence. *See, e. g., Shiman Bros. & Co. v. Nebraska Nat. Hotel Co.*, 143 Neb. 404, 9 N.W.2d 807 (1943); *Hoffman v. Louis D. Miller & Co.*, 83 R.I. 284, 115 A.2d 689 (1955); *Shifflette v. Lilly*, 130 W.Va. 297, 43 S.E.2d 289 (1947). Other jurisdictions have interpreted the provisions of particular statutes as limiting the amount of recovery for loss of a guest's property even when caused by the innkeeper's negligence. *See, e. g., Ricketts v. Morehead Co.*, 122 Cal.App.2d 948, 265 P.2d 963 (1954); *Pfennig v. Roosevelt Hotel*, 31 So.2d 31 (La. 1947); *Levesque v. Columbia Hotel*, 141 Me. 393, 44 A.2d 728 (1945); *Goodwin v. Georgian Hotel Co.*, 197 Wash. 173, 84 P.2d 681 (1938).

■ We are guided in our analysis of the statute in question by the customary principles of statutory construction. Statutes are not to be construed as effecting any change in the common law beyond that which is clearly indicated. *Farnsworth v. Hubbard*, 78 Ariz. 160, 277 P.2d 252 (1954); *Kilmer v. Hicks*, 22 Ariz.App. 552, 529 P.2d 706 (1974). Where a statute is in derogation of the common law, and is also remedial in nature, the remedial application should be construed so as to give effect to its purpose. This concept is expressed by the New Mexico Supreme Court in a case interpreting the innkeeper's liability statutes in that state, as follows:

As a general rule, statutes in derogation of the common law are to be strictly construed. *State v. Chavez*, 70 N.M. 289, 373 P.2d 533 (1962); *El Paso Cat. Loan Co. v. Hunt et al.*, 30 N.M. 157, 228 P. 888 (1924). However, this statute was obviously enacted to ameliorate the effect of the harsh common law rule, and as a remedial statute in derogation of the common law a different rule applies. *In re Gossett's Estate*, 46 N.M. 344, 351, 129 P.2d 56, 60 (1942) sets forth that rule:

"Where a statute is both remedial and in derogation of the common law it is usual to construe strictly the question of whether it does modify the common law, but its application should be liberally construed. [citations omitted]

"There are three points to be considered in the construction of all remedial statutes; the old law, the mischief, and the remedy; that is, how the common law stood at the making of the act; what the mischief was, for which the common law did not provide; and what remedy the parliament hath provided to cure this mischief. And it is the business of the judges so to construe the act as to suppress the mischief and advance the remedy."

*Albuquerque Hilton Inn v. Haley*, 90 N.M. 510, 512, 565 P.2d 1027, 1029 (1977). *See also* A.R.S. § 1–211; *State v. Allred*, 102 Ariz. 102, 425 P.2d 572 (1967).

In interpreting a statute, full effect is to be given to the legislative intent, "and each word, phrase, clause and sentence must be given meaning so that no part will be void, inert, redundant or trivial." *Adams v. Bolin*, 74 Ariz. 269, 276, 247 P.2d 617, 621 (1952). *See also In re Maricopa County Appeal*, 15 Ariz.App. 536, 489 P.2d 1238 (1971).

■ The term "negligence" includes both action and inaction, commission and omission. A.R.S. § 1–215(20); *Salt River Valley Water Users' Association v. Compton,* 39 Ariz. 491, 8 P.2d 249, on rehearing 40 Ariz. 282, 11 P.2d 839 (1932). The word "act," however, "denotes the affirmative. Omission denotes the negative. Act is the expression of will, purpose. Omission is inaction. Act carries the idea of performance. Omission carries the idea of refraining from action." *Randle v. Birmingham Railway, Light & Power Co.,* 169 Ala. 314, 324, 53 So. 918, 921 (1910). W. Prosser, *Law of Torts* § 56, at 338–39 (4th ed. 1971) states:

> In the determination of the existence of a duty, there runs through much of the law a distinction between action and inaction. In the early common law one who injured another by a positive, affirmative act, was held liable without any great regard even for his fault. But the courts were far too much occupied with the more flagrant forms of misbehavior to be greatly concerned with one who merely did nothing, even though another might suffer harm because of his omission to act. Hence there arose very early a difference, still deeply rooted in the law of negligence, between "misfeasance" and "non–feasance"–that is to say, between active misconduct working positive injury to others and passive inaction or a failure to take steps to protect them from harm. The reason for the distinction may be said to lie in the fact that by "misfeasance" the defendant has created a new risk of harm to the plaintiff, while by "non–feasance" he has at least made his situation no worse, and has merely failed to benefit him by interfering in his affairs. [footnotes omitted]

■ Applying these concepts to A.R.S. § 33–302, we hold that the legislature, by using the word "act" in subsection A, intended to eliminate the common law liability of innkeepers and to encourage hotel guests to deposit their jewelry and valuable possessions in the innkeeper's fireproof safe, failing which the guest may not recover a loss from the innkeeper unless the loss results from some *active misfeasance* of the innkeeper, or unless adequate notice of the existence of the safe has not been provided to the guest. Concerning loss of items which are in fact deposited by the guest for keeping in the innkeeper's safe, the legislature, by using the words "fault or negligence" in subsection B, intended to make the innkeeper liable to the guest for any loss occurring thereafter which is the result of the innkeeper's negligent action or inaction.

■ Since appellants did not deposit their valuables in the safe, active misfeasance of the innkeeper must be shown. Appellants' only allegations of fault by appellees for the loss of their jewelry are allegations of failure of appellees to provide adequate security precautions and failure to warn appellants about the number of thefts in the hotel. These are allegations of non–feasance or acts of omission. Therefore, assuming adequate compliance by appellees with the statutory notice requirements, no cause of action exists in favor of appellants for the loss of their jewelry, which was not deposited in the safe while they were guests at appellees' hotel, based on appellees' failure to warn them of the number of thefts and to provide adequate security.

### NOTICE

Appellants also contend, however, that there were questions of fact concerning the adequacy of the notice required by A.R.S. § 33–302(A) which precluded the granting of summary judgment by the court. Appellants note that the notice placed in their rooms did not by its terms advise them that the safe maintained by the hotel was "fireproof." The notice, which was printed in large type, merely referred to the availability of "safety deposit boxes."

■ We agree with appellants that the notice posted by an innkeeper must strictly comply with the terms of the statute in order to effectively relieve the innkeeper of common law liability. 43A C.J.S. *Inns, Hotels, and Eating Places* § 45(b) (1978); 40 Am.Jur.2d *Hotels, Motels, and Restaurants* § 159 (1968); Annot., 9 A.L.R.2d 818, 838

(1950). The language of A.R.S. § 33–302(A) requires the innkeeper "who maintains a fireproof safe [to give] notice . . . that money, jewelry, documents and other articles . . . may be deposited in the safe . . . ."

A "safe" is defined as a "metal box or chest sometimes built into a wall or vault to protect money or other valuables against fire or burglary." Webster's Third New International Dictionary 1998 (1969). The definition of "safety deposit" in Webster's Third New International Dictionary 1998 (1969) refers to the words "safe deposit," which are defined as "of, providing, or constituting a box or vault for the storage of valuables in safety."

■ A.R.S. § 33–302(A) does not require the notice to expressly refer to a *fireproof* safe. The term "safe" or "safety deposit box" adequately conveys to the reader of the notice the impression of a container which protects valuable items from the relevant dangers, including fire. It is our opinion that the contents of the notice furnished by appellees complied with the requirements of A.R.S. § 33–302(A). An innkeeper may incorporate the precise terms of the statute in the notice and yet fail to bring home to his guests in a realistic and forceful manner the availability of a safe depository and the desirability of depositing their valuables therein. It is obvious that the appellees in the present case have made a realistic and forceful attempt, in language which is readily understandable, to convey the most vital information and to encourage their guests to use the safe. The trial court correctly determined that the notice complied with the statutory requirements as a matter of law.

Appellants' final argument is that the question of whether the notice was posted by appellees in a conspicuous place in the office of the Inn or the room of each guest was a fact question for the trier of fact and that summary judgment was improperly entered on the issue.

■ The definition of the verb "post" in Webster's Third New International Dictionary 1771 (1969) includes both "to affix . . . to a post, wall, or other usual place" *and* "to publish, announce, or advertise by or as if by the use of a placard." In interpreting the meaning of words used in Arizona statutes, we apply the common and approved use and definitions of those words. A.R.S. § 1–213. In our opinion, the word "post" as used in A.R.S. § 33–302(A) includes either a physical attachment of the required notice or the placement of the notice in the room or office.

■ The statute also requires that the posting be in a conspicuous place and convey the substance of the information set forth in A.R.S. § 33–302(A). Appellants admitted that a copy of the notice was placed on the dressers in their rooms. The size of the notice and the size of the lettering and the admitted placement of it on the dresser were such that we hold the trial court correctly concluded there was no genuine issue of fact raised by the pleadings or affidavits as to the question of posting of the required notice in a conspicuous place. *See Platt v. New Irvington Hotel of Lakewood, Inc.*, 85 N.J.Super. 330, 204 A.2d 709 (1964). *But see North River Insurance Co. v. Tisch Management, Inc.*, 64 N.J.Super. 357, 166 A.2d 169 (1960) (where court held question of fact for jury was raised on adequacy of notice placed under the glass on the dresser as a small appendage to a larger general hotel directory).

For the foregoing reasons, the partial summary judgment of the trial court is affirmed.

EUBANK, P. J., and HAIRE, J., concur.