804 P.2d 747

**CARROW COMPANY,**
Counterdefendant/Appellee,

v.

**Michael LUSBY and Kay A. Lusby, husband and wife,**
**Counterclaimants/Appellants.**

**No. CV–89–0328–PR.**

Supreme Court of Arizona,
En Banc.

Dec. 18, 1990.
Reconsideration Denied Feb. 21, 1991.

Kimble, Gothreau & Nelson, P.C. by Stephen E. Kimble, David F. Toone, Tucson, for plaintiff.

Juan Perez–Medrano, Daniel C. Gloria, Tucson, for defendants.

### OPINION

CORCORAN, Justice.

Counterclaimants Kay and Michael Lusby (the Lusbys) petitioned for review of a court of appeals opinion affirming the trial court's summary judgment against them on their counterclaim. We granted review to determine whether A.R.S. § 24–502 applies to an action for personal injuries sustained by a motorcyclist when he collides with a heifer on a public highway located in open range. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), and A.R.S. § 12–120.24.

### Factual and Procedural Background

Carrow Company (Carrow Co.) sued the Lusbys in Justice Court seeking damages in the amount of $2,500.00 for the loss of its heifer. Carrow Co. alleged that its property loss resulted from Michael Lusby's negligent operation of his motorcycle. In their answer the Lusbys counterclaimed, alleging that Carrow Co. was negligent in allowing its heifer to wander onto the public highway. The counterclaim sought damages exceeding $50,000.00 for Michael Lusby's injuries, and damages exceeding $25,000.00 for Kay Lusby's loss of consortium and pain and suffering. The case was transferred to superior court pursuant to A.R.S. § 22–201(F), which requires such a transfer upon the filing of a counterclaim seeking damages in excess of $2,500.00.

Carrow Co. filed a motion for summary judgment pursuant to rule 56, Arizona Rules of Civil Procedure, seeking dismissal of the Lusbys' counterclaim. Carrow Co. contended that it owed no duty of care to the Lusbys. Carrow Co. based its argument on Arizona case law holding that on open range, cattle have a right to be on the public highway and drivers are responsible to exercise caution to avoid collisions with cattle. In opposition, the Lusbys contended that considerations of public health and safety dictate that owners of livestock must exercise reasonable care in managing their herds.

Carrow Co. submitted a statement of facts in support of summary judgment and the Lusbys submitted a statement of facts in opposition, both pursuant to rule 4, Arizona Uniform Rules of Practice. Carrow Co. submitted an affidavit by Donald Rowley, its owner, and Michael Lusby submitted an affidavit. The statements and affidavits, considered in a light most favorable to the Lusbys, set forth the facts. Carrow Co. is engaged in cattle ranching in open range encompassing Arivaca Road. Michael Lusby states in his affidavit that on June 17, 1987, he drove his motorcycle along Arivaca Road and a Hereford heifer, owned by Carrow Co., "suddenly crossed in front of him without warning," causing an accident which killed the heifer and injured Lusby.

Based on this record, the trial court granted summary judgment for Carrow Co. on the counterclaim, and ordered that judgment be entered, because there was "no just reason for delay." *See* rule 54(b). The trial court did not resolve the complaint by Carrow Co. and it is not involved in this proceeding. The Lusbys appealed, arguing that the trial court erroneously relied on cases that misconstrued § 24–502 as barring recovery by motorists injured in collisions with cattle on public highways in open range. A.R.S. § 24–502 provides:

An owner or occupant of land is not entitled to recover for damage resulting from the trespass of animals unless the land is enclosed within a lawful fence, but this section shall not apply to owners or occupants of land in no-fence districts.

Additionally, the Lusbys advanced a constitutional argument not raised in the trial court. They contended that, if the trial court's interpretation of § 24–502 was correct, the statute violates Ariz. Const. art. 2, §§ 13 (equal privileges and immunities) and 31 (damages for death or personal injuries), and art. 18, § 6 (recovery for damages for injuries).

The court of appeals affirmed, finding that livestock owners have no duty to keep their cattle off public highways and are absolved from liability by § 24–502. *Carrow Co. v. Lusby*, 163 Ariz. 450, 788 P.2d 1201 (App.1989). The court addressed, but rejected, the Lusbys' constitutional arguments. 163 Ariz. at 451–52, 788 P.2d at 1202–03. We granted review and requested supplemental briefing on the applicability of § 24–502 to actions by motorists seeking damages for personal injuries caused by cattle entering public highways. We conclude that the statute is inapplicable.

*Discussion*

1. *Applicability of A.R.S. § 24–502*

██ In interpreting statutes, we must determine the intent of the legislature. *City of Phoenix v. Superior Court*, 139 Ariz. 175, 178, 677 P.2d 1283, 1286 (1984). Legislative intent often can be discovered by examining the development of a particular statute. *State v. Sweet*, 143 Ariz. 266, 271, 693 P.2d 921, 926 (1985). Section 24–502, which the trial court interpreted as a legislative pronouncement that livestock owners owe no duty of care to motorists, was originally enacted in 1901 as part of the Territorial Code. *See* Revised Statutes § 2652 (1901). In its original form, the statute provided:

No person or persons shall be entitled to damages for stock trespassing upon cultivated or improved land unless such land is enclosed within a lawful fence.

In 1913, the First Legislature considered the statute as part of Senate Bill 56, which included a preamble describing the act as "providing for damages for trespass of live stock on lands enclosed with lawful fences." S.B. 56, 1st Leg. 3d Sess. (1913). As enacted, the statute read:

No owner or occupant of land within this state shall be entitled to damages resulting from the trespass of animals thereon, unless such land is enclosed within a lawful fence; provided, that this section shall not apply to owners or occupants of lands in No-fence Districts as provided in Sec. 6 [Par. 3254] of this act. Rev.Stat. (Civil) § 3250 (1913).

In Arizona, as in other western states, this provision, commonly known as a fencing-out statute, is only a part of a comprehensive statutory scheme governing the co-existence of the cattle industry with other valuable land use. A.R.S. §§ 24–341 through –345 provide for the formation of no-fence districts by petition of a majority of all taxpayers in certain areas. A.R.S. § 24–341(A). Livestock may not run at large in no-fence districts. A.R.S. § 24–342. Upon formation of a no-fence district, owners of livestock become liable for damages for any trespass by their animals, even if the person damaged failed to enclose the land with a lawful fence. A.R.S. § 24–344. *See Ricca v. Bojorquez*, 13 Ariz.App. 10, 473 P.2d 812 (1970). Additionally, violators are subject to *criminal* liability for "recklessly" allowing livestock to run at large. In the event that modern development renders the law of the open range unworkable, including the fencing-out statute, residents are free to form a no-fence district. *See Ricca*, 13 Ariz.App. at 11, 473 P.2d at 813.

██ To determine whether these statutes, particularly § 24–502, govern the liability of livestock owners to motorists injured in collisions with cattle, we examine the statutory language chosen by the legislature. We interpret the words of a statute using their ordinary meanings, unless the context of the statute and the act of which it is a part require otherwise. A.R.S. § 1–213; *State Comp. Fund v. Nel-*

*son*, 153 Ariz. 450, 453, 737 P.2d 1088, 1091 (1987). We also consider the policy behind the statute and the evil it was designed to remedy. *See State Farm Mut. Auto. Ins. Co. v. Wilson*, 162 Ariz. 251, 254, 782 P.2d 727, 730 (1989). In its original form, the fencing-out statute applied only to actions for damages for stock trespassing on *cultivated or improved land*. After statehood, the fencing-out statute was enacted employing language very similar to the current version. However, the 1913 statute limited its terms to actions brought by *owners or occupants of land*.

■ In considering this case, this court became concerned that the statute relied upon by both the parties, the trial court, and the court of appeals, may be entirely inapplicable. Based upon the language of the statute, we find it impossible to apply the statute to personal injuries incurred by a motorcyclist riding on a public highway. Initially, we question whether Michael Lusby's injuries constitute "damage resulting from the trespass of animals." In open range territory, cattle may lawfully enter upon the public highway. *See Stuart v. Castro*, 76 Ariz. 147, 151, 261 P.2d 371, 373 (1953). This conclusion is implied by § 24–342, which makes such activity unlawful in areas designated as no-fence districts, and renders livestock owners subject to civil and criminal liability for permitting their animals to run at large in those areas.

■ However, even assuming, without deciding, that Michael Lusby's injuries constitute "damage resulting from the trespass of animals," we cannot find that the term "owner or occupant of land" is so broad as to encompass a motorist traveling on a public highway. We base this conclusion not only on the language of § 24–504, but on the evolution, since territorial days, of our entire statutory scheme governing the relationship of livestock owners to society.

Neither the general definitional statute, A.R.S. § 1–215, nor Title 24, ch. 3, art. 1, relating to trespassing livestock, includes a definition of "owner or occupant." The evolution of our fencing-out statute, however, illustrates that it was intended to provide a remedy to persons such as landowners, tenants, and perhaps even adverse possessors, who suffer damages caused by trespassing livestock. To recover under the statute, owners or occupants of land outside no-fence districts must erect fences around their property. The statute was intended to impose a duty upon "owners or occupants of land" in certain areas by making fencing a prerequisite to recovering damages from livestock owners. The statute does not govern the liability of a livestock owner to a motorist injured by cattle crossing a highway.

Statutes are not to be construed as effecting any change in the common law beyond that which is clearly indicated. *Terry v. Lincscott Hotel Corp.*, 126 Ariz. 548, 617 P.2d 56 (App.1980). Where a statute derogates from the common law and is also remedial in nature, the remedial application should be construed to give effect to its purpose. *Id.* at 552, 617 P.2d at 60; *see Walker v. City of Scottsdale*, 163 Ariz. 206, 786 P.2d 1057 (App.1989). Therefore, absent a manifestation of legislative intent to repeal a common law rule, we will construe statutes as consistent with the common law. *United Bank v. Mesa N.O. Nelson Co.*, 121 Ariz. 438, 590 P.2d 1384 (1979). Section 24–502 was enacted to modify the common law rule that the owner of livestock was strictly liable for their trespasses. *See Prosser and Keeton on Torts* § 76, at 539–40 (5th ed.1984). The common law rule was rejected by case law or by statute in most western states, where established local custom permitted cattle to graze at large on the range. *See Ricca*, 13 Ariz.App. at 11, 473 P.2d at 813.

A body of Arizona case law aids us in interpreting the meaning of the fencing-out statute. This court considered the predecessor to A.R.S. § 24–502 in 1942. *See Garcia v. Sumrall*, 58 Ariz. 526, 121 P.2d 640 (1942). In *Garcia*, defendants contended that the statute abolished the right of action for trespass by livestock on unfenced lands not located in no-fence districts. Discussing the purpose of the fencing-out statute, the court noted:

[M]any, if not most, of the western states adopted statutes similar to ours above referred to. The obvious purpose and effect of these statutes was to change the common law rule and to make the owner of private premises fence his land to keep animals out, rather than to compel the owner of the animals to fence the land upon which they were grazing in order to keep them in.

58 Ariz. at 535, 121 P.2d at 644. The court held that the fencing-out statute does not completely immunize livestock owners, who would still be liable for acts of willful trespass, defined as "deliberately and intentionally causing their animals to trespass upon private property." *Id.* However, the mere knowledge or expectation that cattle will wander onto private property is insufficient to support liability, and in those cases, the statute requires that the plaintiff erect a fence in order to recover damages. *Garcia* interpreted the fencing-out statute as intended to protect those claiming an interest in private property who have suffered damage as a result of trespassing cattle. This court followed *Garcia* in *Cienega Cattle Co. v. Atkins*, 59 Ariz. 287, 126 P.2d 481 (1942).

The argument that § 24–502 applies to actions by motorists against livestock owners for injuries suffered as a result of collisions on the public highway is based on an opinion of Division One of the Court of Appeals. *See Jensen v. Maricopa County*, 22 Ariz.App. 27, 522 P.2d 1096 (1974). *Jensen* held that the fencing-out statute did not relieve the county of its duty to motorists, which requires that the county maintain public highways in reasonably safe condition. 22 Ariz.App. at 29, 522 P.2d at 1098. In reaching this conclusion, however, the court interpreted *Stuart v. Castro*, as holding that, under § 24–502, owners of cattle owe no duty to motorists injured by cattle on the highway. In *Stuart*, this court stated that "it was not in violation of any statute for these cattle to be loose." 76 Ariz. at 151, 261 P.2d at 373. Division Two of the Court of Appeals followed *Jensen* in examining the issue of duty to motorists in *Parrish v. Goff*, 131 Ariz. 307, 640 P.2d 869 (App.1981) (motor-cycle passenger killed when cow crossed highway in open range land not included in "no-fence" district). The *Parrish* court stated: "Appellees had no duty to motorists to keep cattle off the highway and are absolved from liability by virtue of A.R.S. § 24–502." 131 Ariz. at 307, 640 P.2d at 869.

In this case, the trial court and court of appeals followed *Parrish*, holding that, based on the fencing-out statute, Carrow Co. owed no duty to Michael Lusby. Our examination of the statute reveals that it does not govern the relationship between livestock owner and motorist. *Stuart* does not hold to the contrary. The fact that an act or omission is not prohibited by statute, however, cannot be equated with the absence of a legal duty. Such a duty may be based on either principles of common law or statute. *See Alhambra School Dist. v. Superior Court*, 165 Ariz. 38, 796 P.2d 470 (1990). To the extent that *Jensen* and *Parrish* hold that A.R.S. § 24–502 provides that a livestock owner owes no duty of ordinary care to motorists traveling on the public highway in open range territory, those opinions are disapproved.

## 2. *Common law principles*

 Because we find that the trial court and the court of appeals erred in applying the fencing-out statute, we turn to common law principles to determine whether Carrow Co. had a duty to Michael Lusby. Upon statehood, Arizona adopted the English common law as it existed at the time of American independence only to the extent that "it is consistent with and adapted to the natural and physical conditions of this state." A.R.S. § 1–201; *Summerfield v. Superior Court*, 144 Ariz. 467, 471, 698 P.2d 712, 716 (1985). At common law, the keeper of animals of a kind likely to roam and do damage was strictly liable for their trespasses. *Prosser & Keeton*, § 76 at 539. This rule, however, did not apply to cases where the animals strayed from a highway on which they were being lawfully driven. In that situation, the common law held the livestock owner liable only for negligence in failing to control and retrieve

the animals. The owner of livestock was, therefore, immune from liability as a practical matter for casual trespasses on lands abutting the highway. *Prosser & Keeton,* § 76 at 540.

Courts have often interpreted the common law as holding that owners had no duty to keep their livestock off the highway. *See, e.g., Kendall v. Curl,* 222 Or. 329, 353 P.2d 227 (1960) (owner not liable for collision between horse and automobile). We need not decide whether the early English common law governed the situation presented in this case, but we suspect that any such rule would not be particularly persuasive in light of the vastly different conditions existing in modern Arizona. "Inherent in the common law is a dynamic principle which allows it to grow and to tailor itself to meet changing needs." *Ontiveros v. Borak,* 136 Ariz. 500, 504, 667 P.2d 200, 204 (1983), quoting Douglas, *Stare Decisis,* 49 Colum.L.Rev. 735, 736 (1949). As mandated by our legislature, we define and apply the common law to be "consistent with and adapted to the natural and physical conditions of our state."

The decisions of other courts in the western United States may aid us in this inquiry. Several courts in the western United States have held, as a matter of modern common law, that the owner of livestock owes a duty of ordinary care to motorists traveling on the public highway. In 1941, the Ninth Circuit, applying California law, imposed such a duty. *Galeppi Bros. v. Bartlett,* 120 F.2d 208 (9th Cir.1941). The court assumed, without deciding, that at common law, owners of livestock had no duty to keep their cattle off the highway. Nevertheless, the court declined to follow that rule, concluding that it was inconsistent with modern conditions never contemplated by the common law. The court found "no reason for exempting cattle owners from the same duty applicable to other people to use 'ordinary care or skill in the management of [their] property.'" *Galeppi Bros.,* 120 F.2d at 210. Soon thereafter, the California Court of Appeal followed *Galeppi Bros.* in *Jackson v. Hardy,* 70 Cal.App.2d 6, 160 P.2d 161 (1945).

The New Mexico Supreme Court also followed *Galeppi Bros. See Grubb v. Wolfe,* 75 N.M. 601, 408 P.2d 756 (1965). When *Grubb* was decided, New Mexico had a "local option" law that allowed residents to create herd law districts. In such districts, livestock were not permitted to run at large. *Grubb,* 75 N.M. at 604, 408 P.2d at 758. This statutory scheme is similar to Arizona's no-fence districts. *See* A.R.S. §§ 24–341 to –345.

The *Grubb* court held that a livestock owner owes a duty of care to motorists traveling on the public highway. This duty is a creature of the modern common law, arising from changing conditions on the open range due to the demands of modern society:

> Time and progress have forged the change. While we are still primarily a livestock raising state, our ranches are now criss-crossed with highways carrying many cars and many people at high speeds. Considerations of public health and safety demand that no different rule apply when an owner permits his livestock to cross and re-cross a busy road from that which applies if he himself were crossing and re-crossing on horseback or in a wagon or automobile. In either event, his conduct must be that of a reasonable and prudent person.

*Grubb,* 75 N.M. at 605, 408 P.2d at 759.[1]

Oregon courts have refused to adopt the modern common law view. *See Kendall,*

---

1. Soon after *Grubb* was decided, the New Mexico legislature enacted a statute apparently intended to limit the scope of that decision by defining the standard of care required of owners of livestock. The statute provided:

> Owners of livestock ranging in pastures through which unfenced roads or highways pass shall not be liable for damages by reason of injury or damage to persons or property occasioned by collisions of vehicles using said roads and highways and livestock or animals ranging in said pastures unless such owner of livestock is guilty of specific negligence other than allowing his animals to range in said pasture.

N.M.Stat.Ann. § 64–18–62(C) (1966). The statute required that, to support a finding that the duty of ordinary care was breached, the live-

222 Or. 329, 353 P.2d 227. In *Kendall,* the court found that under the applicable Oregon statutes, the owner of a horse that strayed onto a highway owed no duty to a motorist who was injured in a collision with the horse. 222 Or. at 338, 353 P.2d at 231. The Oregon statutes on this subject were similar to those enacted by our legislature. In livestock districts, allowing an animal to run at large was a statutory violation. *Compare* O.R.S. § 607.044 *with* A.R.S. § 24–342. Areas not designated as livestock districts were open range and, in those areas, livestock owners had a legal right to permit their animals to run at large. *Kendall,* 222 Or. at 333–34, 353 P.2d at 229.

The *Kendall* court reasoned that it was not free to adopt the modern common law view in light of the detailed attention given to the matter by the Oregon legislature. The court stated: "If cattle and horses have a right to be on the road, their owner is not negligent in allowing them on the road." *Kendall,* 222 Or. at 337, 353 P.2d at 231.

We do not agree with this reasoning. The fact that cattle may lawfully occupy public highways in open range does not determine the issue whether a livestock owner owes a duty of care to motorists. Such a law is better interpreted as defining the standard of conduct required of livestock owners in open range. By holding that no duty existed, the Oregon Supreme Court effectively precluded consideration of any specific actions or omissions of the livestock owner, other than allowing the livestock to be at large, which might support a negligence claim.

The concept of a legal duty involves the relationship between individuals, not specific details of conduct. *Markowitz v. Arizona Parks Bd..* 146 Ariz. 352, 706 P.2d 364 (1985). Therefore, we must determine whether a livestock owner owes a duty of ordinary care to motorists traveling on a public highway in open range territory. The question whether a livestock owner is required to erect a fence around his land or to prevent his animals from entering the public highway involves the applicable standard of care, rather than the existence of a legal duty. *See Markowitz,* 146 Ariz. at 355, 706 P.2d at 367. This court has approved the analysis of *Prosser and Keeton,* which states:

> "[D]uty" is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff; and in negligence cases, the duty is always the same—to conform to the legal standard of reasonable conduct in the light of the apparent risk. What the defendant must do, or must not do, is a question of the standard of conduct required to satisfy the duty.

*Prosser and Keeton on Torts* § 53, at 356 (5th ed.1984), quoted in *Coburn v. City of Tucson,* 143 Ariz. 50, 52, 691 P.2d 1078, 1080 (1984).

Whether a duty exists is a question of law for the court. *Hamman v. Maricopa County,* 161 Ariz. 58, 775 P.2d 1122 (1989). We adopt the modern common law view that an owner of livestock owes a duty of ordinary care to motorists traveling on a public highway in open range. "To postulate that the [owner of livestock] has no duty at all ... is to postulate that [the owner] can never be liable, no matter what the circumstances." *Markowitz,* 146 Ariz. at 357, 706 P.2d at 369. Like the *Markowitz* court, "[w]e decline to adopt such a view."

We find that the owner of livestock in open range territory owes a duty of ordinary care to motorists traveling on the public highway. Because the thrust issue decided by the trial court on the motion for summary judgment related to duty and not negligence, we must remand the case for consideration under the principles of negli-

---

stock owner be guilty of some specific act or omission other than simply allowing his animals to graze on the open range. *See Dean v. Biesecker,* 87 N.M. 389, 534 P.2d 481 (1975). Essentially, the legislature determined that in open range territory, allowing one's cattle to graze at large is the conduct of a reasonable and prudent person. In doing so, the legislature merely addressed the applicable standard of conduct, leaving the duty of reasonable care intact.

gence. We note, however, that in order to establish a breach of duty, the Lusbys must point to specific acts or omissions of Carrow Co. that caused their damages. We believe that in open range territory, the mere failure to prevent one's cattle from entering the highway, by erecting fences or otherwise, does not constitute conduct falling below the standard of care required of livestock owners. Thus, if the Lusbys, on remand, present nothing further to show a breach of duty, the trial court is directed to grant summary judgment in favor of Carrow Co.

### Conclusion

We hold that A.R.S. § 24–502 does not govern the relationship between Carrow Co. and the Lusbys. However, under common law principles, a livestock owner owes a duty of ordinary care to a motorist injured in a collision with cattle on a public highway located in open range. The judgment of the trial court is reversed and the case is remanded for proceedings consistent with this opinion. The opinion of the court of appeals is vacated.

GORDON, C.J., FELDMAN, V.C.J., and MOELLER, J., concur.

CAMERON, Justice, dissenting:

I dissent. I agree with the opinion of the Court of Appeals in this matter. *Carrow Co. v. Lusby*, 163 Ariz. 450, 788 P.2d 1201 (App.1989).